## CHARLESTON.

### MORGAN *v.* KING.

Submitted January 18, 1886.—Decided March 27, 1886.

1. The question, whether a sale of personal property is complete or only executory, is to be determined from the intent of the parties as gathered from the contract, the situation of the thing sold and the circumstances surrounding the sale.  (p. 14.)

2. Where the goods sold are sufficiently designated, so that no question can arise as to the thing intended, it is not absolutely necessary, that there should be a delivery, or that the goods should be in a deliverable condition, or that the quantity or quality, where the price depends on either or both, should be determined; these are circumstances indicating intent but are not conclusive.  (p. 14.)

3. But where anything is to be done by the vendor or by the mutual concurrence of both parties for the purpose of ascertaining the price of the goods, as by weighing, testing or measuring them, where the price is to depend on the quantity or quality of the goods, the performance of these things in the absence of anything

indicating a contrary intent is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods may be ascertained and may be in such a state, that they may and ought to be accepted. (p· 14.)

4. Where the contract, the situation of the thing sold and the circumstances surrounding the case are such as to justify a jury in finding, that the sale was complete, and that title to the property passed to the buyer, the trial-court ought not and *a fortiori* the Appellate Court will not set aside such a verdict. (p. 15.)

5. K. sold M. all the merchantable lumber, which he had at certain designated places, at $10.00 per thousand. Nothing was said about examining and measuring the lumber; but a short time thereafter M. spent one day with some hands hired by him in sticking a part of the lumber, when he went home and remained there sick, until a flood in the Ohio river swept away the lumber. M. had sold K. the land from which the timber, out of which the lumber was sawed, was cut, and K. owed M. $1,200.00 on said land, for which M. brought his action and sued out an attachment and levied on the lumber and then bought the lumber and agreed to take the $1,200.00 out and account to K. for the balance. In his affidavit for the attachment M. stated that K. had no property except the lumber. The jury found a verdict for the defendant and assessed his damages at $831.09; and the trial-court entered judgment thereon. HELD:

Under these circumstances this Court will not reverse the judgment and set aside the verdict on the ground that it was not justified by the evidence. (p. 15.)

6. In such an action the attachment-papers are admissible in evidence. (p. 15.)

7. Where it appears, that the jury assessed more than $100.00 in excess of what the evidence, which is all certified, warrants, the judgment will be reversed with costs, and the verdict set aside, and a new trial granted. (p. 16.)

*Simms & Enslow* for plaintiff in error.

*T. L. Michie* for defendant in error.

JOHNSON, PRESIDENT:

This is an action of *assumpsit* brought by Morgan against King in the circuit court of Cabell county to recover the amount of two promissory notes, one for $1,000.00 and the other for $560.00. The defendant pleaded *non assumpsit* and filed with his plea the following offsets:

JOHN M. MORGAN TO THOMAS A. KING, Dr.

| | | |
|---|---|---|
| Dec. 1, 1883. | To 180,106 feet of lumber attached by plaintiff and sold to plaintiff by defendant after attachment at $10.00 per M........ .................... | $1,841 06 |
| | To legal interest on same at 6 per cent. at trial ....... ..... ......... .. .. | 35 00 |
| March 1, 1884. | To bal. due for lumber sold to plaintiff by defendant..... .... .... .... .. | 205 11 |
| Dec. 1, 1883. | To amount paid hands employed by defendant at plaintiff's request to stick lumber for plaintiff.... ...... | 32 50 |

There was a demurrer to the plaintiff's declaration, which was overruled. The case was tried before a jury, and on December 19, 1884, the jury rendered a verdict for the defendant and assessed his damages at $831.09. The plaintiff moved to set aside the verdict and to grant him a new trial, on the ground that the verdict was contrary to the law and the evidence. The court overruled the motion and entered judgment for the defendant for $831.09, the amount found by the jury, with interest from the date of the judgment and for costs. The plaintiff asked the court to certify the evidence, which it did. In the bill of exceptions the plaintiff excepts to the refusal to set aside the verdict and to the overruling of his motion for a new trial. The plaintiff offered in evidence his two notes with the indorsements of credits thereon and then rested.

The defendant then proved, "that, a short time after this suit was brought, the plaintiff and defendant met in Huntington in the early part of December, 1883, and after some talk in regard to matters existing between them the defendant offered to sell the plaintiff all the lumber the defendant had at Jenkins's landing on the Ohio river, in Cabell county, W. Va., at Weather's landing, one mile below the other landing, at defendant's mill one mile back of Weather's landing, in said county, and at Cochran's lumber yard in Huntington, fifteen miles below Weather's landing, at $10.00 per thousand feet; and the plaintiff agreed to take all of said lumber at the price offered that was merchantable." The balance due on his note was to be paid. Nothing was ever said about the measurement of the lumber, the quantity of which was unknown. The plaintiff and defendant met at Weather's landing several days after the foregoing contract was made, at

which place about 75,000 feet of the lumber was scattered
about in small piles where it had been hauled and thrown
from the wagon. The plaintift ordered the lumber at this
place to be stuck up in piles of each kind of lumber to itself,
and the defendant hired hands for the plaintift to stick up the
lumber at that place as directed by the plaintift. The plaintff
remained at that place one day directing the sticking and pil-
ing of the lumber, and then went home and was taken sick
and remained sick and confined to his bed until after the
flood in the Ohio river in February, 1884.

The defendant then introduced in evidence the order of
attachment issued in the case with the clerk's indorsement
thereon, and the levy on a large portion of the lumber men-
tioned in defendant's sets-off, also the affidavit of the plaintiff
Morgan, on which the attachment was based, in which he
claims, that the defendant owes him at least $1,200.00, and
that he had sold him land for the notes he had taken from
him, and that it was agreed that Morgan "should retain pos-
session and title to the timber, which defendant might cut
from said land," and also to the lumber made thereon, and
whatever money the defendant might receive from the sale of
the said timber or lumber should be paid over to the said John
M. Morgan on his claims against said defendant. The defend-
ant, Thos. A. King, was to haul the lumber made from said
timber to the river-bank in order to make sale of the same
for the purpose of paying off said bonds." The affidavit fur-
ther states that "the defendant has in his own name no prop-
erty or real estate in this State known to the plaintiff except
a lot of lumber, the principal part of which, if not all, was cut
from the timber from the land of the plaintiff, and is now
seeking to sell and dispose of the said lumber. The attach-
ment-bond was also offered in evidence. To the admission
of these attachment-papers and each of them the plaintiff ob-
jected, which objections were overruled, and the papers were
read to the jury; and the plaintift excepted.

The lumber contracted to be sold as set out above was cut
and sawed off of a tract of land sold by plaintiff to defendant,
as set out in said attachment-affidavit, and was hauled by the
defendant and placed at the landings aforesaid, which was
not the land sold by plaintiff to defendant. The defendant

cut and sawed from the tract sold by plaintiff to defendant about 500,000 feet, all of which had been sold by said defendant, except what remained at the time of the contract with plaintiff. Some time in February, 1884, the flood in the Ohio river swept all the lumber away except the pile at the mill. About the time the river was about to carry away the lumber, the defendant without any notice to plaintiff employed men to measure the said lumber on the river-bank, none of which had until then been measured. There was found to be at Weather's landing 95,477 feet and at Jenkins's landing 31,000. The lumber at the mill was never measured until a few days before this trial, when it was found to be 29,000 feet. The lumber at Huntington was measured by defendant and another man on November 28, 1884, a few days before the contract of sale to plaintiff and found to be 28,000 feet.

The plaintiff proved, that when he left Weather's landing, where the lumber was being piled, he intended to return shortly, but he was taken sick, as hereinbefore stated, and could not return, and that while sick he notified the defendant twice by messages to come down to his house and settle with him, but that defendant never came nor gave any reasons for not coming.

It is insisted that the facts in this case did not warrant the verdict; that there was no delivery of the property. The question, whether this verdict should be set aside or not, depends upon the inquiry, whether the evidence before the jury justified them in finding as they did, that there had been a delivery of the lumber. They could not find for the defendant without finding this fact. This compels us to inquire what constitutes a delivery of personal property?

In *Hanson* v. *Meyer*, 6 East 614, there was a sale of all a man's starch at a certain warehouse at so much per cwt.; and it was held, that the sale was not complete to pass the property, because the starch remained to be *weighed*, before the price could be ascertained.

In *Wallace* v. *Breeds*, 13 East 522, there was a sale of fifty out of ninety tons of Greenland oil, which was in casks. It was held, that the property did not pass, because according to the constant custom of the trade the casks were to be

search by a cooper employed by the vendor, a broker, on behalf of both the vendor and vendee, who was to attend and make a minute of the foot-dirt and water in each cask, and the casks were to be filled up by the seller's cooper and at his expense, so that they might be delivered in a complete state containing the quantity sold.

In *Austen* v. *Craven*, 4 Taunt. 644, there was a sale of fifty hogsheads of sugar of a certain quality at so much *per cwt.* There were no hogsheads of sugar in existance at the time of the contract. The hogsheads were to be filled and then *weighed* before even the price could be ascertained. Held, that the sale was not complete.

In *Bank* v. *Davis*, 2 Man. & Selw. 397, there was a sale of ten tons of *Riga* flax, then lying at a certain wharf. The flax was in mats of different *weights.* It remained to weigh the flax, before it would be in a situation to be delivered, and it would be necessary to break some of the mats to make up the precise quantity sold. It was held that the sale was not complete so as to pass the property.

In *Shepley* v. *Davis*, 5 Taunt. 617, there was a sale of ten tons out of thirty tons of hemp at a wharfinger's. It remained to weigh the ten tons from the general mass, before the hemp could be delivered. Held the sale was not complete.

In *White* v. *Wilk*, 5 Taunt. 176, there was a sale of twenty tons of oil out of a merchant's stock consisting of several large quantities of oil in cisterns and other places. It remained to measure the oil from the larger masses. Held, the sale was not complete.

In *Simmons* v. *Swift*, 5 B. & C. 857, an owner of a stack of bark entered into a contract to sell it at a certain price *per ton*, and the purchaser agreed to take and pay for it on a day specified, and a part was afterwards weighed and delivered to him. Held, that the property in the residue did not vest in the purchaser, until it had been weighed, that being necessary in order to ascertain the amount to be paid. Bayley, Judge said : "If he (the vendor) was anxious to get rid of the liability to accidental loss, he might give notice to the buyer, that he should at a certain time weigh the bark; but until that act was done it remained at his risk."

In *Pleasants* v. *Pendleton*, 6 Rand. 473, one merchant sold

to another 119 barrels of fine flour lying in a certain warehouse; the barrels had on them the brands of eight different mills; the price was agreed on; the vendee gave his check on a bank for the agreed price of the whole quantity; the vendor gave at the same time to the vendee a bill of parcels specifying the number of barrels of each particular brand and an order on the warehouse-man for the flour, and a receipt in full for the price of the flour : Held, this was a complete and executed contract, and the property in the flour was passed to the vendee; and notwithstanding the warehouse and all its contents including the flour and the check were burnt the next morning before the *actual* delivery of the flour, the loss was the vendee's, and the vendor could recover the price of the flour.

In *Dixon* v. *Myers & Co.*, 7 Gratt. 240, it was held, that where a contract is made for the purchase of an article hereafter to be delivered and paid for, so long as any act remains to be done by the vendor in order to put it in a state of readiness for delivery, or the amount of the purchase-money remains yet to be ascertained by the enumeration, measurement or weighing of the articles, the general rule is, that the property does not pass to the buyer but remains at the risk of the seller. It was in that case decided, that where D. contracted to buy from M. all the tobacco-stems, which M. should make during the year, at a certain price per hundred and for storage, it was the right of M. to weigh and mark the stems directly they were priced and then require payment; but for the convenience of D. the stems were not weighed or marked, until D. was ready to take them away, and D. was charged the storage. During the year the factory of M. was burned, and in it were burned fifty hogsheads of these stems, which had not been weighed or marked, though they had been put aside for D. The property in the stems had not passed to D. and they remained at the risk of M.

In *Prescott* v. *Locke*, 51 N. H. 94, the plaintiff and Locke made an oral agreement, that the defendant would buy of the plaintiff what walnut spokes he should saw at his mill at $40.00 per thousand, to be delivered at the mill in lots of about 10,000 each subject to the defendant's selection. It was understood, that the plaintiff would not saw more than

100,000 ; that each lot was to be paid for on delivery; that when the plaintiff had sawed about 10,000 the defendant should cull them and take such as were selected; that the plaintiff would saw them in the winter and spring months, about 10,000 a month; and that a lot of about 10,000 was to be delivered once a month. Nothing was said about counting them, but the plaintiff understood, that he was to count each lot selected by the defendant, and the defendant understood that he was to count each lot selected by him before he took them from the mill. The year preceding the defendant had purchased of the plaintiff about 27,000 spokes, which were selected by the defendant counted by both parties, before they were removed from the mill, paid for by the defendant and carried by him to Amesburg. The first lot under the agreement of October, 1868, amounting to 10,000 or 12,000 was sawed by the plaintiff, January 16th and 18th the plaintiff counted the pile, handling them himself, and their number was 9,130 ; and on the 18th day of January after counting them he charged them to the defendant on his book. By reason of the condition of the roads it was impossible for the defendant to send for them until January 22, 1869, when they were burned with the mill. The defendant never counted them nor accepted the plaintiff's count of them, nor was the result of this count known to the defendant before the trial. It was held, that there was no delivery of the spokes, and the title did not pass to the buyer.

In *Nicholson* v. *Taylor* 31 Pa. St. 228, the defendants agreed to sell a quantity of lumber to the plaintiffs and signed the following memorandum : "Sold Messrs. R. S. and C. L. N. load of Pine Creek lumber within the neighborhood of 5,000 feet of plank at $15.50 and expenses, taking a note at six months with intesest." Held, that the property in the lumber did not pass to the vendees, and that on a refusal to deliver the lumber in pursuance of the contract *trover* would not lie ; that so long as anything remains to be done between the vendor and vendee for the purpose of ascertaining the amount of the price of the article sold, the property remains in the vendor. Thompson J. said: "The lumber was to be measured before the price could be ascertained so

as to give the six months note for the payment. This was in point of labor as well as in other particulars an important item of the transaction. No time was set for the measurement or for giving the note, the latter being consequent only on the former; all showing that the contract was but executory in fact and intention. The property therefore remained in the vendor."

In *Haxall Brothers & Co.* v. *Willis*, 15 Gratt. 434, Willis sold her crop of wheat to Haxall by sample, the wheat not then being separated from the chaff, and W. was to deliver the wheat to H. at G. depot of a railroad to be carried by the railroad company to Richmond, W. paying the freight to Richmond, and H. to take from the depot in Richmond to his mill at his own cost, where it was to be weighed and tested by the sample, and when thus weighed and tested the price to be paid. The wheat was delivered at the depot at G. and carried by the railroad company to their depot in Richmond, and all but 450 bushels was taken away by H. This 450 bushels was consumed by fire at the depot in Richmond, before it could be removed. It was held, that the title to the wheat was vested in Haxall Brothers & Co., and they had to bear the loss. Judge Daniel in delivering the opinion of the court, admitting that the authorities were in conflict, said: "Still there is I think a decided preponderance of authority in favor of the proposition, that where the subject matter of the contract has not only been completely ascertained and identified but actually delivered, the mere fact, that the weighing, counting, or measuring is yet to be done by the buyer, in order to simply ascertain the aggregate sum of money which he is to pay as the price, does not of itself show such a defect in the transfer of the title, as will prevent the risk of loss from being cast on the buyer." He cites, Selwyn's *Nisi Prius* 1054; 2 Kent's Comm. 675–6; *Sumner* v. *Hamlet*, 12 Pick. 76; *Macomber* v. *Parker*, 13 Pick. 175; *Riddle* v. *Varnum*, 20 Pick. 280; *Morgan* v. *Perkins*, 1 Jones (Law) 171; *Tyler* v. *Strang*, 21 Barb. 198; *Orofoot* v. *Bennett*, 2 Comst. 258; *Page* v. *Carpenter*, 10 . NH. .77; *Cunningham* v. *Ashbrook*, 20 Mo. 555.

In *Macomber* v. *Parker*, 13 Pick. 175, it was decided, that, where a quantity of goods bargained for is actually deliv-

ered, the sale is complete, notwithstanding the goods are to be counted, weighed or measured, in order to ascertain the amount to be paid for them. The court in its opinion said: "The general principle is, that where any operation of weighing, measurement, counting or the like remains to be performed in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put in a deliverable state, the contract is incomplete until such operation is performed. Broun on Sales 44. But where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing or measuring or counting afterwards, would not be considered as any part of the contract of sale, but would be taken to refer to the adjustment of the final settlement as to the price. The sale would be as complete as a sale upon credit before the actual payment of the price. Nothing can be found in any of the numerous cases on this point which militates against this position."

In *Riddle* v. *Varnum*, 20 Pick. 280, it was decided, that, where some act remains to be done in relation to the articles, which are the subject of a sale, as that of weighing or measuring, *and there is no evidence tending to show the intention of the parties to make an absolute and complete sale*, the property in the articles does not pass to the vendee, until such act is performed. But it is otherwise, if the payment of the purchase-money is not a condition precedent to the transfer, and it appears, that the parties intended, that the sale should be complete, before the articles were measured or weighed. In that case the facts were, that R., who was the owner of a quantity of timber lying in a mill-pond at the termination of a canal, entered into a contract with C. for the sale thereof, in pursuance of which C. signed the following writing: "Received of R. four shots of white oak, &c., for which I promise to pay him $26.00 per thousand board-measure, the above timber delivered in the mill-pond," &c.; and R. at the same time executed a writing in the following words: "Received of C. $200.00 in part payment for the timber in question. Remainder to be paid in ninety days from surveying; the canallage to be paid by C. when he takes the plank and timber from the pond." R. further agreed, that C. might

procure the timber to be measured by the superintendent of
the canal, and that he would abide by the measurement.
Before the timber was measured, C. became insolvent, and
it was attached by one of his creditors. It was held, if there
was a delivery to C. and if it was the intention of the par-
ties to make the sale complete, before the timber was meas-
ured, the property was vested in C. at the time of attachment.
Drury J. in delivering the opinion of the court said :

" The question presented for adjudication is whether upon
the evidence detailed in the report of this case it would have
been competent for the jury to return a verdict for the
defendant. If such a verdict could by law be sustained, the
parties agree that judgment should be entered for defend-
ant." * * * After discussing the legal question, and
referring particularly to *Macomber* v. *Parker*, 13 Pick. 182,
he said : " The court are of the opinion that upon a proper
application of those principles to the present case, the jury
would have been warranted from the testimony to find, that
it was the intention of the parties here contracting to make
the sale of the articles complete and absolute before the
measure of them was ascertained. There is evidence in the
case from which the jury might have *inferred* a *delivery* to
Curtis & Barston of the articles sold. This will be found in
the written memorandum which the plaintiff received from
the vendees, and in the testimony of Josselyn as to a conver-
sation between himself and the plaintiff. In connection
with this may be considered the actual payment of $200.00
on account of the purchase, and the fact that payment
for the residue was not a condition precedent to the deliv-
ery, inasmuch as by the terms of the contract a credit
of ninety days was given. If such a delivery was found by
the jury, the sale might be considered as perfected, and the
property would pass to the vendees, as is well settled."

In *Pike* v. *Vaughn*, 39 Wis. 499, it was held, that in gen-
eral, where a vendor in a contract for the sale and delivery of
logs is bound to ascertain the quality by having the logs
scaled, title does not pass to the vendees, until all the logs are
delivered and duly measured ; but the parties may enter into
a valid agreement, that the title shall pass, as fast as the logs
are deposited in the place agreed upon for delivery ; and in

that case they will be at the vendee's risk from the time of such deposit, even though the vendor may still be bound to have them scaled.

In *Lingham* v. *Eggleston*, 27 Mich. 324, the contract was as follows: " Flint, September 23, 1871, Lingham and Osborne bought from C. Eggleston this day all the pine lumber on his yard at Birch run at the following prices: For all common $11.00, and to include all better at the same price; and for all culls $5.50 per thousand, to be paid as follows, $500.00 to-day, and $500.00 on the 10th of October next; the balance one half on January, 1, A. D. 1872, and the rest on the 1st of February following; said lumber to be delivered by said Eggleston on board of cars when requested by said Lingham and Osborne which shall not be later than the 10th of November next. Also some shingles at $2.00 per thousand for No. 2, and $4.00 for No. 1." Before the lumber was measured it was burned. It was held, the title did not pass to the purchasers. The court decided, that the question, whether a sale is completed or only executory, where no question arises under the statute of frauds, and the rights of creditors do not intervene, is one to be determined from the intent of the parties as gathered from their contract, the situation of the thing sold and the circumstances surrounding the sale; that when the goods sold are sufficiently designated, so that no question can arise as to the thing intended, it is not absolutely essential there should be a delivery, or that the goods should be in a deliverable condition, or that the quantity or quality, when the price depends on either or both, should be determined; these are circumstances indicating intent but are not conclusive. But where anything is to be done by the vendor or by the actual concurrence of both parties for the purpose of ascertaining the price of the goods, as by weighing, testing or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these things in the absence of anything indicating a contrary intent is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in such a state, that they may and ought to be accepted. Chief Justice Cooley laid down these principles and they commend them-

selves to our judgment and approval. They are true, clear and reasonable.

In *Crofoot* v. *Bennett*, 2 Comst. 258, the owner of a brick-yard in consideration of a previous indebtedness and of a new advance sold by writing to the defendant 43,000 bricks to be taken out of an unfinished kiln containing a larger quantity. He also delivered to the defendant formal possession of the yard and agreed with him to burn the kiln, which he accordingly did and then executed to the plaintiff a bill of sale for all the bricks in the kiln. It was held that the defendant was entitled to take the 43,000 bricks, although they were not counted out, marked or separated from the residue; and that the plaintiff could not maintain trespass against him for such taking.

In *Kimberly* v. *Patchin*, 19 N. Y. 330, it was decided, that upon the sale of a specified quantity of grain its separation from a mass undistinguishable in quality or value, in which it is included, is not necessary to pass the title, when the intention to do so is otherwise clearly manifested. In *Russell* v. *Carrington*, 42 N. Y. 118, it was decided, that on the sale of a specified quantity of grain, part of a cargo stored in an elevator, the delivery by the vendors to the vendees upon payment of the agreed price of a receipted bill of sale and subsequently of an order for the grain purchased drawn upon the elevator by the person, upon whose account the cargo was stored, and who was superintendent of the elevator, sufficiently manifests an intention to pass the title and renders the transaction an executed contract without actual separation or delivery of the property. In that case it appeared, that before the grain had been actually delivered, the elevator and grain were consumed by fire.

The case of *Burrows* v. *Whitaker*, 71 N. Y. 291, is much like the case here. It was an action to recover the alleged contract-price of a quantity of lumber sold to defendant; plaintiff's evidence tended to show, that defendant contracted to purchase of plaintiff all the lumber, which the latter should deliver at a place designated on the Delaware river before the first rafting freshet in the spring; the lumber to be paid for at a price specified for the good and for the culled. Defendant was to furnish a man to cull and pile, and the lumber

was to be counted on the bank, or estimated in the raft. The plaintiff commenced hauling to the place designated, an employe of the defendant assisting in culling and piling, but before the lumber so drawn had been counted or estimated, a portion of it was swept away by a flood. It was held, that the evidence was sufficient to sustain the finding by the jury of a valid delivery and acceptance, and to sustain a recovery; that when it appears there has been a complete and full delivery of property in accordance with the terms of a contract of sale, the title passes, although there remains something to be done in order to ascertain the total value at the rates agreed upon.

It is very evident from these cases, that the general rule needs qualification. The intention of the parties in a contract of this character as in any other contract is the agreement; and the general rule, that we have so often referred to in the cases cited, is but the expression of what the judges thought in each particular case was the agreement of the parties. It will not be denied by any one, that the parties can expressly agree, that the articles purchased shall pass at once to the buyer, although they are to be measured, weighed or counted, and the price is to be precisely ascertained and paid in the future. In every case the inquiry is : What was the intention of the parties? When that intention is ascertained the law will respect it. The question, whether a sale of personal property is complete or only executory, is to be determined from the intent of the parties as gathered from their contract, the situation of the thing sold and the circumstances surrounding the sale. Where the goods sold are sufficiently designated, so that no question can arise as to the thing intended, it is not absolutely necessary, that there should be a delivery, or that the goods should be in a deliverable condition, or that the quality or quantity, when the price depends upon either or both, should be determined; these are circumstances indicating intent but are not conclusive. But where anything is to be done by the vendor or by the mutual concurrence of both parties for the purpose of ascertaining the price of the goods, as weighing, testing or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these

things in the absence of anything indicating a contrary intent is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods are ascertained and are in such a state, that they may and ought to be accepted.   Where the contract, the situation of the things sold and the circumstances surrounding the sale, are such as to justify a jury in finding that the sale was complete, and that the title of the property passed to the buyer, the trial-court ought not and *a fortiori* the Appellate Court will not set aside the verdict.

Now was the evidence before the jury in this case sufficient to sustain the verdict, that the sale of the lumber was complete, and that the title passed to Morgan ?   The contract was, that King sold to Morgan all his merchantable lumber at his mill at Weather's landing, at Jenkins's landing and at Cochran's lumber-yard in Huntington at $10.00 per thousand, The thing sold was clearly designated unmixed with any other property ; all that was left to be done was to measure it and reject the unmerchantable lumber, if any, and give and receive the balance of the price, for about $1,200.00 was paid down in the claim of Morgan against King in suit.   The surrounding circumstances are as follows : Morgan had sold King a tract of land, and on that land King still owed him about $1,200.00 ; King failing to pay said price, Morgan attached the lumber or a great part thereof; King could not after that sell the lumber or do anything but await the issue of the action and attachment.   Morgan in his affidavit says, that King has no property other than the said lumber.   He buys the lumber under these circumstances. · Why should he want to leave the lumber under the attachment ?   What could King do with it, if Morgan did not choose to take it ? Morgan also ordered a part of it stuck, thereby exercisng acts of ownership over it.

From all these circumstances we must say, that the jury was warranted in finding, that the sale was complete, and that the title of the property passed to Morgan.

It is said by counsel for plaintiff in error, that the court erred in admitting the attachment-papers.   As we we have already seen, these papers showed a part of the circumstances surrounding the sale and were properly admitted in evidence.

It is also assigned as error, that there was no proof of the item of $205.00, balance on lumber sold. This is true, and we can not tell, whether the jury considered it at all. The jury gave more damages than the evidence warranted. A calculation will show, that the amount is over $100.00 in excess of what is proved. The evidence is all certified; and there was no evidence whatever of the item of $205.00, and none as to the cost of sticking the lumber by the hands furnished by King. For this error in the verdict of the jury it ought to have been set aside by the trial-court.

The judgment must therefore be reversed with costs, the verdict set aside, and a new trial granted; and the case is remanded for a new trial according to the principles announced in this opinion.

Reversed.   Remanded.