# CHARLESTON

## STATE v. DAVIS.

### Submitted June 8, 1907. Decided November 12, 1907.

1. INTOXICATING LIQUORS—*Telephone Order For—Judgment.*

   A judgment of acquittal, in a case submitted to the court in lieu of a jury, on an agreed statement of facts, showing that the accused, a licensed retail dealer in intoxicating liquors, had received at his place of business a telephone message, ordering liquor, to be delivered at the place of residence of the customer, and there to be paid for, and accepted the order, selected from his stock the article ordered, and delivered it and received payment therefor in accordance with the terms of the order, is not erroneous. (p. 509.)

2. SAME—*Dealer's Place of Business—Sale—Where Made.*

   On a writ of error in such case, the State is regarded as a demurrant to evidence, and it would be competent for a jury to find, on the facts agreed and common information and knowledge of the practice of retail dealing, which they have the right to consider, that the sale was complete, so as to pass the title of the liquor, at the dealer's place of business. (p. 509.)

3. SAME—*Sale at Place of Business—Not at Place of Delivery—When.*

   A sale by a retail dealer in intoxicating liquors, in which the delivery is made within the town or county in which he has a license, in fulfillment of an order, received and accepted at the place of business, designated in his license, from his stock of goods kept in that place, is deemed by the law a sale at the place of business and not a sale at the place of delivery, unless it appears that the place of delivery was agreed upon as the place of sale. (p. 510.)

4. Statute—*Exposition Of.*

    A contemporary exposition of a statute, uncertain in its meaning, recognized and acquiesced in, for a long period of time, by the officers charged with the duty of enforcing it, the courts, the Legislature and the people, will be adopted unless it is manifestly wrong. (p. 511.)

Error to Circuit Court, Cabell County.

Action by the State of West Virginia against C. A. Davis. Judgment for defendant, and plaintiff brings error.

                                    *Affirmed.*

Clarke W. May, Attorney-General, and George S. Wallace, for the State.

Williams, Scott & Lovett, and George I. Neal, for defendant.

Poffenbarger, Judge:

The criminal court of Cabell county, on the trial of C. A. Davis, charged with having sold intoxicating liquors without having a State license for the sale thereof, found the accused not guilty and discharged him on the following facts, a jury having been waived, the case submitted to the court in lieu thereof and the facts agreed:

    "Charles Davis, the defendant, is a resident of the City of Huntington, county of Cabell and State of West Virginia. He is engaged in the business of selling spirituous liquors, etc., and is duly licensed to sell the same at No. 755 2nd Ave., in said city. And for a more particular description, his place of business where he keeps and maintains a saloon, is the south-west corner made by the intersection of Second Avenue and *Eight* Street in said City of Huntington, that on the —— day of October, 1905, and within one year prior to the finding of the said indictment, one Emma McDonald, residing with one Bettie Mead, at No. —— on Second Avenue, in said City, and distant about one square from the said defendant's saloon, gave an order from the house where *shre* resided, over the telephone, to the defendant, at his place of business, to forward to her at her place of residence a certain quantity of beer, and that she would, when the beer was delivered to her, pay the price for the same; that pur-

suant to said order so made, the defendant had forwarded to her the beer by his porter and that when the porter delivered it to her, she paid him for it.

"She stated that she had a number of times ordered beer in this way; that same had been sent to her by the defendant and that when delivered, she would pay for it and she always knew the price of the beer; that one time, or perhaps oftener, she had, when phoning to the defendant for beer, stated to him that she did not have the necessary change, but that she had money of such and such denomination, and that if defendant would send with the beer the requisite change, that, in that manner, she could and would pay for the beer; that at such time or times 'the defendant had sent the necessary change as requested, and that in that way she had paid for the beer."

The circuit court of said county having refused a writ of error, one was granted by this Court.

The authorities seem to hold almost uniformly that a sale within the meaning of all statutes making certain sales illegal, is a complete sale, passing the title to the liquor from the vendor to the vendee, not a mere executory contract of sale. "The offense of illegally selling liquor is not committed by a bargain- or executory contract of sale. There must be a completed sale, which passes the property, consummated by the act of the parties as distinguished from the operation of the law, and amounting to a vending and purchasing of the particular commodity. It is not necessary that the liquor should have been paid for by the purchaser. But there must have been a delivery of the liquor to him." 23 Cyc. 180. This is the construction given to our statute in *State* v. *Hughes*, 22 W. Va. 743. *State* v. *Flanagan*, 38 W. Va, 53, applies the same test. The all important question, therefore, is what constitutes an executed contract of sale. All the authorities say this is a question of the intention of the parties, and that it is possible for them to make the title pass at such stage of the negotiations as they may see fit, provided there is an offer of purchase or sale on the one hand, and accepted on the other hand, and an agreement as to the identity of the thing to be sold and the price to be paid for it. So far as the possession is concerned, it may remain with the seller or pass to the buyer.

Actual delivery into the hands of the vendee is not essential. *Morgan* v. *King*, 28 W. Va. 1; *Hood* v. *Black*, 29 W. Va. 245. Usually when the thing sold remains in the possession of the seller or some third person, and the sale is regarded as complete, there is no duty resting upon the vendor to make an actual removal thereof from his premises or delivery thereof into the possession of the vendee. This is a circumstance bearing on the question of intention, which, in many cases, has controlling force. It was regarded as such in *Pleasants* v. *Pendleton*, 6 Rand. 473; *Dixon* v. *Myers*, 7 Grat. 240; *Huxall* v. *Willis*, 15 Grat. 434; *Morgan* v. *King*, 28 W. Va. 1; and *Hood* v. *Black*, 29 W. Va. 245. Indeed, there are few instances in which the title is said to have passed, when, by the contract, the vendor has taken it upon himself to make an actual delivery at a given place. Thus, in *Bloyd* v. *Pollock*, 27 W. Va. 75, the vendor agreed to deliver the article sold at a railway depot, and it was held that the title did not pass, and the sale was not executed and complete, until after the delivery had been made as stipulated.

Notwithstanding these apparently arbitrary rules, Judge Johnson, speaking for this Court in *Morgan* v. *King*, after having reviewed a number of decisions illustrating the operation of these principles, declared the general rule to be, that the intention of the parties controls, whatever it may have been. The rule was enunciated in the following terms: "It is very evident from these cases, that the general rule needs qualification. The intention of the parties in a contract of this character as in any other contract in the agreement; and the general rule, that we have so often referred to in the cases cited, is but the expression of what the judges thought in each particular case was the agreement of the parties. It will not be denied by any one, that the parties can expressly agree, that the article purchased shall pass at once to the buyer, although they are to be measured, weighed or counted, and the price is to be precisely ascertained and paid in the future. In every case the inquiry is: What was the intention of the parties? When that intention is ascertained the law will respect it. The question, whether a sale of personal property is complete or only executory, is to be determined from the intent of the parties as gathered from

their contract, the situation of the thing sold and the circumstances surrounding the sale.   Where the goods sold are sufficiently designated, so that no question can arise as to the thing intended, it is not absolutely necessary, that there should be a delivery, or that the goods should be in a deliverable condition, or that the quality or quantity, when the price depends upon either or both, should be determined; these are circumstances indicating intent but are not conclusive.   But where anything is to be done by the vendor or by mutual concurrence of both parties for the purpose of ascertaining the price of the goods, as weighing, testing or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these things in the absence of anything indicating a contrary intent is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods are ascertained and are in such a state, that they may and ought to be accepted.   Where the contract, the situation of the things sold and the circumstances surrounding the sale, are such as to justify a jury in finding that the sale was complete, and that the title of the property passed to the buyer, the trial court ought not and *a fortiori* the Appellate Court will not set aside the verdict."

In *State* v. *Hughes*, this Court, in determining, from the facts disclosed by the record, the place of sale, in order to fix its character as legal or illegal, applied the rules governing sales generally.   When the statute does not prescribe what shall constitute a sale, legal or illegal, under the laws regulating the traffic in liquors, the common law rules generally govern in determining the question.   Black on Intox. Liq., section 403.   These rules require an agreement upon the price and the identity of the thing sold in all cases.   An agreement upon the sale of a certain quantity, or a certain number, of articles out of a mass of property of a given kind is generally regarded as purely executory.   The articles intended to be sold must be set apart from the general mass to which they belong and specifically agreed upon as the articles sold.   Whether this and no more is sufficient to constitute a sale was not decided in *State* v. *Hughes.*   The order for the liquor had been taken in Taylor county, to be filled by the dealer in Wood county.   The vendor in

Wood county selected from his stock, and set apart, the articles ordered and then delivered them to a common carrier in Wood county for shipment to the vendee in Taylor county. As the delivery made to the common carrier, under a consignment to the vendee, was, in the absence of any stipulation to the contrary, a delivery to the vendee, it was unnecessary to determine whether the sale would have been complete, by the separation and packing of the goods in the place of business by the vendor. JUDGE GREEN, delivering the opinion of the Court, expressly waives that question. He said: "But we need not consider under what circumstances the property vests in the vendee before it is delivered by the vendor to the carrier, and which is still in the warehouse of the vendor, because in the case before us, the whisky to be sent to Taylor county to different purchasers was all delivered to the common carrier in Wood county, and the defendant's warehouse was in the same county, therefore the completed sale, the transfer of the property in the whisky to the several purchasers, must have occurred in Wood county."

The case presented here is peculiar and anomalous. It is significant that of all the cases reported, from the several states of this country, only one or two has been found which deals with transactions between the retail dealer and his customer in the district in which he had a license. There are a great many decisions holding that, if the vendor, by himself or his servant, make a delivery of liquors, outside of the district in which he has a license, in fulfillment of an order communicated by mail or otherwise, and receive pay for it at the place of delivery, the sale is deemed to have been made at that place and held illegal. But, in *United States* v. *Lackey*, 120 Fed. Rep. 577, the contrary was held, the Court declaring as follows: "A licensed liquor seller received orders from customers living in a place where he was not authorized to sell. He filled such orders by separating the liquor from the stock in his place of business, and delivering the packages, marked with the customers' names, to a private carrier, to be carried to the customers, and to be delivered at their place of residence, on payment of the price. *Held*, that the sales were completed in the seller's place of business, where he was licensed to sell, and

hence the carrier was not liable for retailing liquor without a license." Judge McDowell, delivering the opinion of the Court, said: "The common carrier is the agent of the consignor if the title does not pass until delivery to the consignee, and is the agent of the consignee if the title passed on delivery to the carrier. Just so even where the carrier is one in the regular salaried employ of the seller, whose sole business is to carry and deliver articles for the seller to his customers. In such cases, if the title passed at the time of delivery by the seller to the servant, the servant is *pro hac vice* the agent of the buyer. In arriving at a conclusion as to whether or not the title passed at the time of delivery by the seller to the servant, the question is, as in all cases of sales of chattels, one of intent. If it was expressly or impliedly agreed between the buyer and seller that the title should not pass until delivery by the servant to the buyer, then the sale was made at the place of delivery to the buyer. But in the case at bar we have no facts to warrant us in assuming an intent that title was not to pass on delivery of the kegs to Lackey."

It seems to me that in cases of this sort, the fact that the dealer personally or by his agent makes a delivery of the commodity and receives pay for it, beyond the territory in which his license is held, is an important circumstance, weighing heavily on the construction of the statute. One object of the liquor laws is the raising of revenues. The state is divided into revenue districts, a license required in each district, and a license court set up in each district, to the end that the revenue may be augmented by limiting the territory covered by each license. To permit a dealer having a license in one county or town to send his delivery wagon beyond the limits thereof, for the purpose of filling orders, and thus bringing his liquors within the convenient reach of the inhabitants of such territory, might well be regarded as inconsistent with the policy of the law, and so constituting an illegal sale, even though it be legal, taking into consideration the intent of the parties, if made within the license district. The same principle would apply if the adjoining territory were one in which sales were prohibited, for then it might well be said that the legislature did not intend liquor to be brought within the convenient reach of the inhabitants of that territory.

The circumstances of this case are wholly different. Here, there is no reason for applying anything upon the inquiry respecting the place of sale other than common law principles, giving wide operation to the intention of the parties, and such construction as the statute may have received.

The criminal and circuit courts no doubt judicially noticed the important respects in which the retail trade in all commodities differs from the wholesale trade and mere isolated or occasional sales, and assumed that the nature of the trade and the well known methods of conducting it had important weight on the question of the intent of the parties as to where the title should pass, whether at the dealer's place of business or at the place of delivery. In all cities and towns of any size, retail merchants in many lines of business, and especially those in which goods are sold by well known names and brands, such as groceries and liquors, take orders at their places of business for the specific articles wanted, by telephone or otherwise, separate them from the stock of goods on hand, wrap them and deliver them by messenger, sometimes traveling afoot and sometimes using a delivery wagon or cart for the purpose. Sales are thus made both on credit and for cash. Ordinarily, in such case, neither party expects the goods to be returned, and they are not, when the order is for a certain article, described by brand or otherwise, and filled as accepted. The merchant considers it sold and the customer deems it bought as soon as it is taken from the shelf or case and packed for delivery. When this has been done, there is an agreement upon the price and the identity of the article sold, and, if the parties intended the title to pass at this point, nothing in the law forbids it. As illustration, coffee, flour and sugar, staple articles known by the different brands, and constituting the subjects of millions of sales every day, may be taken. If the order is accepted and filled as given, the goods are rarely, if ever returned. Return thereof is not contemplated by either and each considers the sale complete as soon as the articles are packed for delivery. The same thing occurs when the subject matter is whiskey, wine, beer or any other beverage. Bottles of it or mere drinks in glasses are ordered from restaurants or hotel

rooms.  Is it conceivable that either party expects or con-
templates the refusal or return of a glass of liquor, a mere
single drink, so ordered and prepared for delivery?  When
business is so transacted by a licensed retail liquor dealer,
he receives and accepts the order, and segregates and sets
the articles apart and prepares them for delivery, at the
place of business designated in his license, and if both par-
ties intend the title to pass there, it does so and the same is
there completed, although actual delivery thereof has not
been made.  It is important also to observe the origin and
development of this usage or custom of retail dealers.  When
orders are not so given the customer goes to the store, se-
lects what he wants, agrees upon the price and has the arti-
cle prepared for delivery.  Then the sale is complete.  The
merchant does nothing more.  This no doubt was the well
nigh universal method in times gone by.  Now, the cus-
tomer often does the same thing, and, when the sale has
been so made, is asked whether, as a matter of accommoda-
tion, the merchant shall deliver them for him.  Under the
old method of transacting such business, the sale was al-
ways completed at the store, even though the goods should
be returned for some mistake or failure of warranty.  In
such case a completed contract of sale was rescinded, not
treated as never having been made. ·  When, under the new
method, the purchaser selects his goods at the store and has
them put in deliverable condition, the sale is complete, al-
though the merchant, by way of accommodation, afterwards
delivers them at the residence of the purchaser.  Gradually
the further usage of sending an order and trusting the
merchant to select and pack the goods in accordance there-
with and deliver them, for the accommodation of the cus-
tomer, has grown up.  To say, as matter of law, that mer-
chants intended, by the adoption of this usage or custom,
to change the nature of the contract, the character of which
had been long settled and firmly established by law, would
subordinate everything to a blind technicality, applying a
rule of law developed under wholly different circumstances.
It would amount to an assumption that, by the introduction
of a slight departure from the universal method of doing
business, for the mere convenience of customers, the great
body of merchants throughout the country intended to

change the nature of the retail mercantile contract of sale, and not only this, but also to put their customers on unequal footings in respect to their contracts passing the title in some instance at the place of business and in others at the place of residence or delivery.

In view of these considerations, our conclusion is, that the burden was upon the state to prove intent to complete the sale at the place of delivery, and that, on the evidence, a jury, considering the nature, origin and development of this usage and practice, obtaining and observed in retail dealing, would have been justified by the evidence in finding that, by the intention of the parties, the sale was completed at the defendant's place of business. Juries may not act upon or consider their personal knowledge of the facts and circumstances of the case in hand, in arriving at a verdict, but they may avail themselves of the general knowledge of matters of elemental experience in human nature, commercial affairs and every-day life. Wigmore Ev., section 2570; *Leary* v. *Railroad Co.*, 173 Mass. 373; *Lamoureux* v. *Railroad Co.*, 169 Mass. 338; *R.* v. *Rosser*, 6 C. & P. 648; *Bradford* v. *Cunard Co.*, 147 Mass. 55; *Head* v. *Hargrave*, 105 U. S. 45; *Stevens* v. *State*, 3 Ark. 66; *Schmidt* v. *Ins. Co.*, 1 Gray 529. Here the state, being the plaintiff in error, is regarded as a demurrant to the evidence, and so as having admitted all fair inferences arising from the evidence of the defendant in error. *Rohrbaugh* v. *Express Co.*, 50 W. Va. 148; *Mercantile Co.* v. *Truax*, 44 W. Va. 531; *State* v. *Denoon*, 34 W. Va. 139; *Laidley* v. *Smith*, 32 W. Va. 387; *C. & O. Ry. Co.* v. *Deepwater Ry. Co.* 57 W. Va. 641, 674. From this rule, it results that, as the jury, had there been one, might well have found the parties intended the title to pass at the accused's place of business, the finding of the court cannot be disturbed. That the purchase money was not paid, nor intended to be paid at the saloon, nor before delivery, is by no means conclusive, for title is often passed by agreement, and possession retained for the enforcement of the seller's lien for purchase money. *Buskirk Bros.* v. *Peck*, 57 W. Va. 360, where numerous authorities asserting this doctrine are cited.

Whether, under the circumstances of this case, the Court would be bound to say, as matter of law, in the absence

of evidence tending to show a special agreement to complete the sale at the place of delivery, it was complete at the place of business, we do not decide, though it would seem to result from the foregoing observations and conclusions.

The judgment is sustained by the further view that the statute does not inhibit delivery outside of the place of business of a retail dealer, but within the territory in which he has a license, in fulfillment of orders received and accepted at his place of business. In other words, the accepted construction of the statute is, that such sales are deemed to have been made at the place of business. Otherwise, every delivery made by such a dealer at an express office, railway station, wharfboat or steamboat landing, or into a wagon in the street, would be a violation of the statute. If the place of delivery is controlling, every such delivery would effect a sale at a place other than the place of business designated in the license. It is a matter of common knowledge, of which the court takes judicial notice, that such deliveries have always been made, and the validity of the sales not questioned, except perhaps in a few isolated cases. In the whole history of the state, this is the first case ever brought to this Court involving the question. The general public, prosecuting attorneys and judges of trial courts have all regarded these transactions as valid under the statute and allowed them to go on unmolested. Session after session of the legislature has been held in the meantime, and by its failure to interfere by the passage of any statute, declaring the law to be otherwise, that body has recognized this construction as embodying the true intent and meaning of the statute. This applies the strong and wholesome rule of contemporaneous construction, so generally and often resorted to by the courts in seeking legislative intent. *State* v. *Harden*, 58 S. E. 715; *Mann* v. *County Court*, 58 W. Va. 651; *McCullough* v. *Maryland*, 4 Wheat. (U. S.) 316; *Stuart* v. *Laird*, 4 Cranch (U. S.) 299; *Packard* v. *Richardson*, 17 Mass. 122; *Holmes* v. *Hunt*, 122 Mass. 505; *Fullington* v. *Williams*, 46 Neb. 88; *Wallace* v. *Bradshaw*, 54 N. J. L. 175. It may be consistently said, under this construction, that, although ordinarily the place of delivery determines the place at which the sale becomes complete and executed, for the purposes of this law, de-

livery made anywhere in the license district in fulfillment of an order received and accepted at the place of business of the dealer, is nevertheless deemed to have been made at the place of business. This construction requires the stock of goods to be kept in the place of business, and orders therefor to be received and accepted and the goods set apart and packed for delivery at the place designated in the license and not elsewhere, It does not authorize peddling or the carrying about of liquors for sale at places other than the place of business. Nor does it authorize the carrying of liquors outside of the assessment district, in violation of the general policy of the law, looking to the augmentation of the revenues, where two license districts, granting licenses, adjoin each other, and restraint of the traffic in liquor, when a license district in which licenses are granted, adjoins one in which licenses are not granted. It gives the privilege or license of the retail dealer such scope only as is necessary to the convenient exercise thereof. He is a retail dealer, which implies that he carries on his business in much the same manner as retail dealers in other commodities carry on theirs. Whatever they find necessary and convenient in the transaction of their business, is necessary and convenient in the carrying on of his. Hence, it is not unreasonable to say that the legislature, in authorizing what it calls a retail dealer's license, intended that he should have the rights and powers incident to retail dealing, as settled by ages of experience, except in so far as it has expressly denied them by some terms used in the statute. This is so reasonable and just that it is not surprising at all, that the people and the officers and courts, charged with the enforcement of the law, as well as the legislature, have adopted and acquiesced in it as the true exposition of the statute, for all these years. If the people are not satisfied with what thus plainly appears to be their own understanding of the law, they have an easy and ready means of relief in the legislature. If that body should deem it necessary or expedient to require every purchaser of liquor from a retail dealer to go and carry it away with his own hands or send his agent or servant for it, contrary to what has always been the practice and understanding of the law, and thus load down the privilege it allows with the utmost restraint and inconvenience, it has ample

power to write its will into law. And it may add the requirement that the saloon be located under ground, on top of the highest hill, on the fifth floor of a building, having no elevator, or beyond the reach of any public highway and not less than five miles from any human habitation, and make it unlawful to sell more than a single drink on the occasion of any visit to it. Thus the argument that the legislature intended to make drinking as inconvenient as possible runs to an absurdity.

In adopting this view we do not overlook the limitation upon the rule of contemporary exposition, denying it application when the statute is certain and unambiguous in its terms. Our statute makes a sale, effected elsewhere than at the place of business designated in the license, a sale without a license, but does not say what shall constitute a sale at a place other than the place of business. The courts must ascertain that by interpretation, and, in doing so, they must resort to rules prescribed for that purpose.

Seeing no error in the judgment, we affirm it.

*Affirmed.*