# CHARLESTON.

## HOOD *v.* BLOCH BROS.

Submitted Sept. 6, 1886.—Decided Nov. 25, 1886.

I. REVERSAL OF JUDGMENT—DEMURRER.

     Where a declaration contains two or more counts, and there is a demurrer to each count; some of the counts are bad, and the de-

murrer is overruled as to all; the evidence is all certified, and the case is brought to this Court on a writ of error, HELD: Notwithstanding it was error to overrule the demurrer to the bad counts, still, if this Court is satisfied that all the plaintiff's evidence was admissible under the good counts, it will not reverse the judgment of the trial-court for such error. (p. 250.)

2. SALE OF PERSONAL PROPERTY—COMPLETE OR EXECUTORY—INTENT OF PARTIES.

Whether a sale of personal property is complete or only executory, is to be determined from the intent of the parties as gathered from the contract, the situation of the thing sold and the circumstances surrounding the sale. (page 250.)

3. SALE OF PERSONAL PROPERTY—TITLE.

It was error to instruct the jury, that the title to the property therein mentioned vested in the buyer upon the signing and delivery of a contract of the following purport: I have this day sold to B. all my Swiss cheese now in my cellars, between 80 and 90 loaves, this does not include cracked or second class cheese, at 12¼ cents per ℔; the cheese to be paid for when received; the second grade cheese to be at 10¼ cents per ℔; B. to pay ½ freight from F., and to have all out of the cellars before Jan'y 1, 1885; and the contract is dated and was delivered Oct. 27, 1884. (p. 250.)

4. SALE OF PERSONAL PROPERTY—WARRANTY.

In an action upon such a contract it is error to instruct the jury that there was no implied contract that the cheese should be merchantable or salable. (p. 252.)

5. SALE OF PERSONAL PROPERTY—CAVEAT EMPTOR.

The maxim, *caveat emptor*, does not apply to a sale of goods where the buyer has no opportunity for inspection. (p. 252.)

6. SALE OF PERSONAL PROPERTY—WARRANTY.

But where the sale is of a definite existing chattel, specifically described, the actual condition of which is capable of being ascertained by either party, there is no implied warranty. (p. 253.)

7. SALE OF PERSONAL PROPERTY—WARRANTY.

Where a manufacturer undertakes to supply goods manufactured by himself, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article. (p. 253.)

*Caldwell & Caldwell* for plaintiffs in error.

*G. R. T. Allen and R. G. Barr* for defendant in error.

SNYDER, JUDGE:

Assumpsit brought February 19, 1885, in the Circuit Court

of Ohio county by William Hood against Samuel S. Bloch and Aaron Bloch, partners composing the firm of Bloch Bros., to recover $510.93, the price of cheese sold by the plaintiff to the defendants. The declaration contains the common counts and also a special count setting forth the contract for the sale of the cheese and the acceptance of it by the defendants. There was a demurrer to each count of the declaration, which the court overruled; the defendants pleaded non-assumpsit, and afterwards paid into court $306.14 and pleaded non-assumpsit as to the residue of the plaintiff's account. The plaintiff accepted the $306.14 in part satisfaction of his claim and replied generally to the defendants' plea. A trial was had by jury and a verdict returned in favor of the plaintiff for $201.29 which the defendants moved the court to set aside, but the court overruled the motion and on May 30, 1885, entered judgment for the plaintiff for the amount of the verdict. During the trial the testimony was taken down and written out in full by a stenographer. At the instance of the defendants all the evidence was embraced in the bill of exceptions, which also shows the exceptions of the defendants to questions and answers of witnesses as well their exceptions to the giving and rejection of certain instructions. To review the rulings of the court as shown by said bill of exceptions the defendants have brought this writ of error.

On October 27, 1884, the following written sale and purchase contracts were entered into by plaintiff, Hood, and the defendants, Bloch Bros., respectively, in the city of Wheeling, the first is signed by the plaintiff and the second by the defendants:

No. 1—" I have this day sold to Bloch Bros. all my Swiss cheese which I now have in my cellars, being between 80 and 90 loaves, this does not include the cracked or second-class cheese, at 12 and one-quarter cents per ℔ (12¼); the cheese to be paid for when received; the second grade cheese to be at 10¼ cents per ℔; Bloch Bros. to pay ½ freight from Fairmont. Must be shipped before January 1, 1885. Shinnston, Harrison co., W. Va."

No. 2—" We have this day bought of Wm. Hood all of his Swiss cheese (between 80 and 90 loaves) that he has now in

his cellar, at 12¼ (twelve and quarter) cents per ℔, this does not include the cracked or second-class cheese, for which we are to pay him 10¼ cts. We to pay ½ freight from Fairmont, and to have it all out of his cellar before January 1, 1885.''

By the written request of the defendants the cheese was not delivered to the defendants in Wheeling until about February 15, instead of January 1, 1885, as specified in the contracts of sale. The sale was made in Wheeling and at that time the cheese was in the cellars of the plaintiff, at or near Shinnston, in Harrison county, this State, and it was not seen or inspected by the defendants until it was delivered in February as above stated. On the same day this sale was made the plaintiff had sold and delivered to the defendants another lot of cheese which the plaintiff's testimony tended to prove was of a grade inferior to that embraced in the said written contract. But the defendants' evidence tended to prove that some of the cheese delivered in February was at that time inferior to any of the lot delivered in October, and that part of the former was unmerchantable and unsalable. To the introduction of any evidence to show that any of the cheese delivered in February was at that time unmerchantable the plaintiff objected, the court sustained the objection and the defendants excepted. The defendants also excepted to the refusal of the court to permit them to produce one of said cheese before the jury on the trial of the case.

It appeared, that the defendants were dealers in cheese in the city of Wheeling and that the plaintiff was a farmer and manufacturer of Swiss cheese, but did not personally attend to the manufacture and had no special knowledge of the business of manufacturing cheese; that the man employed by him and who made this cheese had been engaged in cheese-making about 24 years. All the cheese was delivered at the store of the defendants in Wheeling, where they separated it and refused to take or pay for that part of it for which the jury gave their verdict in this case. The ground on which this refusal was based according to the defendants' evidence was that said cheese fell below second class cheese and was unmarketable, while the plaintiff's evidence tended to show it was because it was not first class

cheese, the defendants contending they had bought first class cheese only. . The defendants also introduced evidence tending to prove, that the contract of sale was procured by the misrepresentation and fraud of the plaintiff, and the plaintiff's evidence tended to contradict this and show that there was neither fraud nor misrepresentation, and that the sale was fair in all respects. There was also evidence on both sides as to the condition of the cheese, and as to what classes cracked or rat-eaten cheese belongs, and whether or not it is merchantable.

After all the evidence had been introduced, the court, at the instance of the plaintiff, instructed the jury as follows:

" No. 1. The jury is instructed that the cheese, for the price of which this suit is brought, became the property of the defendants as soon as the written contract was signed and delivered by the parties.

" No. 2. The jury is instructed that there was no implied warranty by the plaintiff that the cheese should be merchantable.

" No. 3. The jury is instructed that the cheese being the property of the defendants from and after the 27th day of October, 1884, the plaintiff was bound to use such care in keeping the cheese as an ordinarily prudent man would use in caring for his own property.

" No. 4. The jury is instructed that in considering the question of fraud or misrepresentation in the procurement of the contract of sale, you must first find the condition of the cheese on the 27th day of October, 1884, as compared with the lot then sold to the defendants by plaintiff.

" No. 7. If you find that the contract for the cheese was not fraudulently procured, then you must find for the plaintiff, and fix the value of the cheese delivered by finding how much of it was to be paid for at $12\frac{1}{4}$ cents per pound and how much to be paid for at $10\frac{1}{4}$ cents per pound.

"No. 8. In the absence of fraud, the written contract dated Oct. 27th, 1884, is the only evidence to be considered in determining the terms of the agreement between the plaintiff and defendants as to the goods sold and the price to be paid."

To the giving of any and each of said instructions the de-

fendants objected and their objections being overruled they
excepted.   The defendants then asked the Court to instrcut
the jury as follows:

"No. 1. The jury is instructed that to entitle the plaintiff
to recover for any of the cheese sold at 12¼ cents per pound,
he must prove that it was better than cracked or second-class
cheese, and to entitle him to recover for any of the cheese
sold 10¼ cents per pound, he must prove that it was cracked
or second-class cheese.

"No. 2. The plaintiff cannot recover for second-class cheese,
if any was delivered by him to Bloch Brothers, unless such
second-class cheese was of merchantable quality of that
class.

"No. 3. In determining who was to deliver the cheese un-
der the contract of sale of the same, the jury are entitled to
consider any and all circumstances in evidence surrounding
the parties when they made the contract, and thus to arrive
at the meaning of the contract as to delivery, as well as to
what is cracked or second-class cheese as understood by the
parties to the contract."

But the court refused to give any of said instructions and
the defendants excepted.   The court then instructed the jury
as follows:

"No. 1. The jury is instructed that to entitle the plaintiff
to recover for any of the cheese sold 12¼ cents per pound,
he must prove it was better than cracked or second-class
cheese.

"No. 2. If the jury find from the evidence that the letters
and postal cards in evidence were written by the parties
whose names are signed to the same, then the plaintiff must
be held to have waived a delivery of the cheese on or before
Jan'y 1st, 1885.

"No. 3. If the plaintiff waived a delivery of the cheese on
or before Jan'y 1st, 1885, then the plaintiff should not be al-
lowed compensation for shrinkage of the cheese before it
was delivered to Bloch Brothers in February, 1885.

"No. 4. If the jury find from the evidence that a false rep-
resentation of a material fact was made by Hood to Samuel
S. Bloch, which induced Bloch to make the contract on Oc-
tober 27, 1884, and on which Bloch had a right to rely, the

3²

contract is void, even though Hood was ignorant as to whether the representation was true or false.

"No. 5. If a seller, in order to induce a sale, makes a false representation as to any material fact, by which a purchaser is mislead to his injury, and in which the purchaser is presumed to have trusted to the seller, then the contract founded on such representation is void, whether the seller knew the representations to be false at the time they were made or not, and whether made with a fraudulent intent or not."

1—The first question for consideration arises upon the demurrer to the plaintiff's declaration. It is not pretended that there is any defect in any of the common counts except the one for "goods, wares and merchandise sold," &c. This count is substantially the same as the one which follows it. The latter is admittedly a good count for the sale and delivery by the plaintiff to the defendants of "divers goods, wares, merchandise and chattels." All the evidence is certified and we can see that it was admissible under this count. So even if the court erred in overruling the demurrer to the special and first common counts, the defendants were not prejudiced, and therefore not entitled to have the judgment of the Circuit Court reversed for such error—*Stolle* v. *Ætna Ins. Co.*, 10 W. Va. 546.

In order to entitle a party to have a judgment against him reversed, it must appear not only that there is error, but that such error is or might be to his prejudice. The record here shows that the defendants were not prejudiced.

2—The second question presented for our decision is, whether the written contract of October 27, 1885, must, of itself, and as a matter of law, be held to be an executed contract? The first instruction asked by the plaintiff and given to the jury by the court holds the affirmative of this proposition. Is that holding according to the law of this State correct? In *Morgan* v. *King*, 28 W. Va. 1, this court, after an elaborate review of the authorities on the subject, held, that, "The question, whether a sale of personal property is complete or only executory, is to be determined from the intent of the parties as gathered from the contract, the situation of the thing sold and the circumstances surrounding the

sale." Johnson, President, in delivering the opinion of the
Court in that case says: " Where the goods sold are suffi-
ciently designated, so that no question can arise as to the
thing intended, it is not absolutely necessary, that there
should be a delivery, or that the goods should be in a deliver-
able condition, or that the quantity or quality, when the
price depends upon either or both, should be determined;
these are circumstances indicating intent but are not conclu-
sive. But where anything is to be done by the vendor, or
by the mutual concurrence of both parties, for the purpose
of ascertaining the price of the goods, as by weighing, test-
ing or measuring where the price is to depend upon the
quantity or quality of the goods, the performance of these
things, *in the absence of anythiug indicating a contrary in-
tent,* is to be deemed presumptively a condition precedent
to the transfer of the property, although the individual goods
are ascertained and are in such condition that they may and
ought to be accepted"—28 W. Va. 14, 15; *Leighorn* v.
*Eggleston,* 27 Mich. 324; *Nicholas* v. *Taylor,* 31 Pa. St. 128;
*Dixen* v. *Myers,* 7 Gratt. 240.

This decision it seems to me is conclusive of the question
now under consideration. The written contract of Oct. 27,
1884, shews upon its face, that there was not to be an imme-
diate delivery of the cheese, that there was to be no pay-
ment until the quality of the cheese as well as the precise
quantity had been ascertained by classifying and weighing
it, and neither of these things were to be done until the time
fixed upon for the delivery. In the absence of anything in-
dicating that an immediate delivery was intended by the
parties, this was clearly not a completed, but an executory
sale. We are not called upon in the present state of this
case to decide whether or not the jury, if the question had
been submitted to them, would have been warranted by the
contract, the situation of the thing sold and the surrounding
circumstances, in finding that this was in fact intended by
the parties to be a completed sale. The court in this case
took all these considerations from the jury and instructed
them, as a pure matter of law, that the written contract of
itself imported a present completed sale as of its date. This
was error. It follows therefore that the plaintiff's first in-

struction as well as the assumption in the first part of his third instruction were improper and should not have been given to the jury.

3—The third enquiry is, whether or not there was an implied warranty by the plaintiff that the cheese sold by him to the defendants should be merchantable. The contract is in writing and it contains no express warranty. The general rule seems to be, that in a sale of goods by description, where the buyer has not inspected them, there is, in addition to the condition precedent that the goods shall answer the description, an *implied warranty* that they shall be salable or merchantable. (*Merriam* v. *Field*, 24 Wis. 640; *Gallagher* v. *Waring*, 9 Wend. 20; *Hanks* v. *McKee*, 2 Litt. 227.)

In *McClung* v. *Kelly*, 21 Iowa 508, it was decided, " As a general rule, unless there has been a warranty, false representation or fraudulent concealment, the purchaser of property, *under a completed contract*, must take it regardless of its defects, while an *executory contract* of sale always carries with it an obligation that the property shall be merchantable, at least, and not have any remarkable defect."

The law on this subject was reviewed and the cases classified in *Jones* v. *Just*, L. R. 3 Q. B. 197, decided in the Queen's Bench in 1868, and it was held that, " The maxim, *caveat emptor*, does not apply to a sale of goods where the buyer has no opportunity of inspection." In this case the contract was in writing and contained no express warranty. In delivering the opinion of the court, Mellor, J., says : "The cases which bear upon the subject do not appear to be in conflict, where the circumstances of each are considered. They may, we think, be classified as follows :

"First, where goods are *in esse* and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim, *caveat emptor*, applies, even though the defect which exists in them is latent, and not discoverable on examination, at least where the seller is neither the grower nor the manufacturer. The buyer in such case has the opportunity of exercising his judgment upon the matter ; and if the result of the inspection be unsatisfactory, or if he distrusts his own judgment, he may if he chooses require a warranty. In such case, it is not an implied term of the

contract of sale that the goods are of any particular quality or are merchantable.   *   *   *

"Secondly, where the sale is of a definite existing chattel, specifically described, the actual condition of which is capable of being ascertained by either party, there is no implied warranty.

"Thirdly, where a known described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known described and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

" Fourthly, where a manufacturer or dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is an applied term or warranty that it shall be reasonably fit for the purpose to which it is to be applied. In such case the buyer trusts to the manufacturer or dealer, and relies upon his judgment and not upon his own.

" Fifthly, where a manufacturer undertakes to supply goods manufactured by himself, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article."— *Gardiner* v. *Gray*, 4 Campb. 144 ; *Laing* v. *Fidgem*, Id. 169 ; *Shepherd* v. *Pybus*, 3 Man. & Gr. 868.

The rules above stated are quoted with evident approval in Benjamin on Sales, and that author says : " In a sale of goods by description, where the buyer has not inspected the goods, there is, in addition to the *condition precedent* that the goods shall answer the description, an *implied warranty* that they shall be salable or merchantable."—Benjamin on Sales, sec. 656. The above italics appear in the text, and the rule thus declared is the same as that in *Merriam* v. *Fields*, 24 Wis. 640, hereinbefore mentioned. In support of this rule numerous American cases are cited in Bennett's Edition of Benjamin on Sales.

The general rules thus announced by the Court in *Jones* v. *Just*, *supra*, seem to me to be in accord with reason and

the weight of authority both in England and America. The important enquiry in the case at bar is, under which of the five rules. thus laid, does it come? The cases of *Moses* v. *Mead*, 43 Am. Dec. 676, and *Emerson* v. *Brigham*, 6 Id. 113, cited for the defendants in error, come under the classes of cases described in one or the other of the first three rules above given. *Moses* v. *Mead* makes a distinction between executed and executory sales.

If therefore the case before us shall be found by the jury to be an executory sale, that case will not be authority for the position taken by the defendant in error. Nor do the Virginia cases cited by him—*Mason* v. *Chappel*, 15 Gratt. 572; *Gerst* v. *Jones*, 32 Id. 518, and *Proctor* v. *Spratley*, 78 Va. 254—have any very direct bearing upon the case before us. They come more or less directly under the cases classified in the aforesaid second and third rules; while in my judgment the case at bar must be classed under the fourth or fifth rule above stated; that is, must be considered from the evidence as being "a sale of goods by description, when the buyer has not inspected the goods;" or a contract by a manufacturer or dealer "to supply an article which he manufactures or in which he deals, to be applied to a particular purpose." In either of these cases the buyer trusts to the manufacturer or dealer and relies upon his judgment, and there is an implied warranty that the article shall be reasonably fit for the purpose for which it is purchased in the one case, and that it shall be merchantable or salable in the other.

In this case it must be assumed that the buyer and seller both contemplated a dealing in cheese that was merchantable. Bloch Bros., the buyers, were merchants, dealing in Swiss cheese, and they bought for the purpose of sale; and Hood, the seller, could not on any other supposition than that the cheese was merchantable have expected or believed that Bloch Bros. would buy it; and the latter must be taken to have trusted to the judgment, knowledge and information of Hood, the seller and manufacturer of the cheese, as it is clear, that they could exercise no judgment of their own, the parties at the time of the sale being in the city of Wheeling and the cheese in the cellars of Hood in a distant county.

This necessary trust in and reliance upon the judgment and information of the seller, seems to be at the root of the doctrine of implied warranty, and in this view it makes no difference, whether the sale is of goods specially appropriated to a particular contract, or to goods purchased as answering a particular description—L. R. 3 Q. B. 206; *Biggs* v. *Parkinson*, 7 H. & N. 959.

It follows, therefore, that the Circuit Court erred in giving to the jury the second instruction asked for by the plaintiff, and also in refusing to allow the defendants to introduce evidence before the jury to prove that the cheese was not merchantable at the time it was delivered. I do not think, however, the court erred in refusing to permit the defendants to produce one of the cheese to the jury on the trial. No matter how bad the cheese may have been in Feb'y, when it was delivered, it would certainly have been much worse three months thereafter, when the case was tried. Then, if the defendants were allowed to produce one of the worst cheese, as they no doubt would have done, the plaintiff would have the right to produce one of the best, and so the process might be continued until the entire lot of cheese had been brought into the court room. In all cases of this kind a large discretion must be confided to the trial court as to exhibitions of articles of a bulky nature before the jury, and I do not think that discretion was abused in this particular matter in question.

I see no objection to the plaintiff's fourth, seventh and eighth instructions except that it would be better to define more precisely the lot of cheese referred to in the fourth as sold on Oct. 27, 1884.

The court did not err in refusing the three instructions requested by the defendants. From what has been hereinbefore said it is apparent that neither of these instructions correctly propounded the law as applied to the evidence in this case. If the said second instruction had not confined merchantable cheese to second-class quality, thereby telling the jury, that as a matter of law no cheese below second-class is merchantable, that instruction might have been unobjectionable. The instructions given by the court in lieu of those asked by the defendants, were not objected or excepted to, nor

is any complaint of them or any of them made by either party in this Court. They seem to me to be unobjectionable.

For the errors aforesaid, the judgment of the Circuit Court must be reversed, the verdict of the jury set aside and a new trial directed.

REVERSED. REMANDED.