# CHARLESTON

BUSKIRK BROS. *v.* PECK.

Submitted February 21, 1905.   Decided March 14, 1905.

1. EXECUTORY CONTRACT CONSTRUED.

An entire executory contract of sale may be divisible in the execution thereof so as to vest title to parts of the property in the vendee as they are delivered, and, whether in any case such partial transfer of title takes place, is a question of intent.   (p. 367.)

2. CONTRACT CONSTRUED — *When Title Passes.*

The point at which title passes in the progress of the execution of a contract of sale is a question of intent to be gathered from the terms of the contract, the nature of the property, its condition and situation, the purposes for which the contract was made, and the circumstances surrounding the parties, when the terms used are such as to make them admissible in evidence.   (p. 368.)

3. CONTRACT CONSTRUED.

Though generally a sale is not complete until the property has been ascertained and designated and made certain as to its identity, quantity, quality and price, title will vest in the vendee without final and complete ascertainment of the aggregate quantity and price, if the intent that it shall do so be made manifest.   (p 369.)

4. Title by Contract—*When it May Pass.*

Title to property may pass under a contract of sale, though there be neither payment of purchase money nor complete delivery of possession. (p. 369.)

5. Contract Construed—*Improvements.*

If, by the terms of an executory contract of sale, the vendee is required to expend money, and perform labor, upon the property so as to change its character and situation, title to it as so altered will vest in the purchaser, unless a contrary intention be shown. (p. 370.)

6. Contract Construed—*Timber—Vendor's Lien.*

Under a contract of sale of the timber on a tract of land to be cut and removed by the vendee within a specified time and measured and paid for each month and before removal, as the work progresses, title vests in the purchaser as the timber is cut down, and the vendor has a lien thereon for the purchase money. (p. 371.)

7. Conrtact Construed—*Timber Contract—Waiver by Vendor.*

The purpose of a clause in such contract providing that, in case the purchaser shall fail to have the timber measured and pay for the same each month as cut and hauled, he shall forfeit all right and title to the timber whether cut or not and all payments made on account thereof, is to prevent the accrual of a large indebtedness under the contract and the cutting of large quantities of timber without paying for it; and, if the vendor suffers large quantities to be cut down without such monthly measurement and payment, he will be deemed to have waived the benefit of such clause. (p. 371.)

8. Contract—*Equity Control of.*

Equity will not permit the perversion of a forfeiture clause in a contract to a use or purpose for which it was never intended. (p. 372.)

9. Contract—*Waiver of Forfeiture Clause by Implication.*

By permitting the accomplishment of the general result for the prevention of which a power of forfeiture has been inserted in a contract, and standing by in silence while large expenditures are made in the prosecution of the work, after the accrual of the right of forfeiture, under the belief that it will not be exercised, the party having such right of forfeiture waives it. (p. 371.)

10. Decedent's Estate—*Preservation of by Equity—Receiver.*

Creditors of a decedent's estate may resort to a court of equity for the ascertainment and preservation of the property and assets of the estate and subjection of the same to the payment of the debts against it, when the personal representative refuses to perform his duty in the premises, and, if necessary to full and adequate relief, a receiver may be appointed to take charge of the property. (p. 373.)

11. DECEDENT'S ESTATE PRESERVED—*Receiver—Personal Representative.*
  A receiver may be appointed to take charge of, care for, put in
  marketable condition and sell, timber belonging to a decedent's
  estate, lying on the lands of a stranger, subject to his purchase
  money lien, at the instance of creditors, when the personal repre-
  sentative has refused to do so.  (p. 373.)

Appeal from Circuit Court, Logan County.

Bill by Buskirk Bros. against R. W. Peck, curator, and
others.  Decree for defendants, and complainants appeal.

*Reversed.*

J. S. MILLER, F. C. LEFTWICH and J. S. MARCUM, for
appellants.

McCOMAS and NORTHCOTT, for appellees.

POFFENBARGER, JUDGE:

Buskirk Bros, merchants, to whom the estate of George A.
Lilly, deceased, is indebted in an amount slightly exceeding the
sum of three thousand dollars, for merchandise furnished him,
while engaged in certain logging and timber operations, in
the course of which he died, brought this suit in equity
against the curator of said estate and Henry Mitchell who
claims a large amount of timber, which, according to the
allegations of the bill, belongs to said estate, for the purpose
of subjecting said timber and all other property of the dece-
dent to the payment of his debts.

This timber seems to constitute the chief assets of the
estate.  It was cut from the land of the defendant, Henry
Mitchell, under a certain contract, containing a forfeiture
clause, under which Mitchell has taken possession of the tim-
ber, claiming Lilly's title thereto has been forfeited.  The
contract reads as follows:

"This Agreement, made and entered into this 20th day of
June, 1903, by and between Henry Mitchell of the first part
and George A. Lilly of the second part, both of the county
of Logan and state of West Virginia,

"Witnesseth: That the said Henry Mitchell is the owner
in fee of a large tract of land on the East side of the Guyan-
dotte River about five miles below the town of Aracoma and
situate in Logan county, West Virginia, and that as such
owner he has this day sold unto the said party of the second

part all of the merchantable poplar, cucumber, ash and oak saw-log timber from sixteen inches in diameter and up six feet above the ground (small built trees not included) for which the said George A. Lilly agrees to pay the sum of eleven cents per cubic foot for all poplar, cucumber and ash timber and eight cents per cubic foot for all oak timber; five hundred dollars of which is to be paid in cash before any part of the timber here mentioned shall be cut which shall be held and not accounted for until all of the timber herein mentioned shall be cut and measured, and the said party of the second part further agrees to have the said timber which is cut and hauled to the measuring place measured over each month and not removed therefrom until fully paid for and in case the said Lilly fails to make such monthly payment then this contract is to be void and the said Lilly is to forfeit all the payments which he has made and the timber whether cut or not is to revert to the said Mitchell and the said Mitchell on his part is to give the said Lilly such rights of way as he may need in removing said timber which is under the contract of the said Mitchell together with such unmerchantable timber as the said Lilly may need in constructing roads or shanties for the purpose of marketing said timber the said Lilly to do as little damage as possible to said real estate and the said Lilly is to commence work on said timber on or before the 10th day of July, 1903, and is to have eighteen months to complete the removal of the same.

"Witness the following signature and seals this 20th day of June, 1903.

"Henry Mitchell, (Seal.)
"G. A. Lilly,    (Seal.)"

Lilly began in July, 1903, and cut large quantities of poplar, cucumber, ash and oak timber, continuing his work until sometime in February, 1904, when he was attacked by typhoid fever and died in March, 1904. Within that period he paid Mitchell sixteen hundred dollars. As to the application of these payments by Lilly, if he made any, there is no competent evidence in the record. Mitchell, in his answer, and in an affidavit filed, says it was applied on the cucumber, poplar and ash timber cut, and was sufficient to pay all the purchase money on account of that timber, except the sum of three hundred and nine dollars, which was paid by Nye &

Bro., to whom Lilly sold that part of the timber cut by him. The bill charges that Lilly had cut, in addition to that timber, about three thousand oak logs and had hauled to the banks of the Guyandotte river about two thousand of them, leaving the remainder in the woods, and that, in the cutting and logging of this timber, Lilly had spent about six thousand dollars. It is further charged that the oak timber so cut down is worth ten thousand dollars or more, after deducting the purchase money due thereon.

The bill prayed for the appointment of a receiver to take charge of the timber and other property of the decedent, for the disclosure by Mitchell, of the accounts between himself and Lilly, and for a reference to a commissioner to ascertain the property belonging to the estate and the debts against it and their priorities.

On the 28th day of April, 1904, R. P. Peck was appointed special receiver and directed to take charge of the property admittedly belonging to the estate, make a complete inventory thereof, sell and convert the same into money, remove the timber cut and lying upon the lands of Mitchell and sell the same and keep an itemized account of his expense incurred in the removal and sale of said property.

Subsequently, Belle Lilly, widow of the deceased, was appointed administratrix, and an amended and supplemental bill was filed, making her and S. M. Hudson additional defendants, and process thereon was issued and served. This bill averred that Mitchell had sold the oak timber to S. M. Hudson instead of to the Hudson School Furniture Company as erroneously alleged in the original bill; that the curator was not a necessary party, he never having taken charge of the timber; that the administratrix had declined and refused to take charge of it; that the timber was worth, over and above the amount due Mitchell, ten thousand dollars or more; that Lilly had expended about six thousand dollars in the work which he had done upon it; and that Mitchell, by his conduct, in permitting all this work to go on and large expenditures to be made in cutting and logging said timber and in the construction of tramways, skids and other necessary contrivances, in consequence of which large indebtedness had been incurred on the faith of the contract to merchants, employees and subcontractors, had waived the forfeiture clause of the contract

and was estopped to declare a forfeiture and assert title to the timber so cut.

Mitchell's answer virtually admits the facts alleged in the bill and amended bill, insists upon the validity of his title to the timber, admits the payment of the sixteen hundred dollars, but says it was all applied on timber other than that in controversy, denies any collusion between himself and the administratrix and insists upon the discharge of the receiver and the dismissal out of the suit, of said timber and himself as a defendant.

No depositions were taken, but certain affidavits were filed both by the plaintiffs and Mitchell. A motion to discharge the receiver, made on the first day of July, 1904, was overruled, but the former order was modified so as to deny power to remove or sell any of the timber until the next regular term of the court. This was before Mitchell had answered. It was renewed on the 28th day of July, 1904, upon the filing of his answer. On the first day of August, 1904, the cause was heard upon the original and amended bills, affidavits, answers of Peck, curator, and Mitchell, general replications thereto and all the former orders and decrees, as well as the motion of Mitchell to discharge the receiver and to have himself dismissed from the suit. Both of these motions were sustained and the receiver was directed to sell the other personal property of the estate and retain the proceeds until the further order of the court. From this decree the plaintiffs have appealed.

Appreciating the important bearing of the interpretation of the contract upon the propriety of the order appealed from, counsel for the appellee, in view of the recital in the contract of the sale by Mitchell to Lilly of all the merchantable poplar, cucumber, ash and oak saw-log timber on the tract of land mentioned in the contract, and the agreement on the part of Lilly, to pay, at certain prices, for all such timber and to deposit, on account of purchase money, before cutting any part of the timber, the sum of five hundred dollars, to be held and not accounted for until all the timber mentioned in the agreement should be cut and measured, say that the contract is entire, binding Lilly to cut and pay for all the timber on the tract of land, in consequence of which his breach thereof, in refusing to cut and pay for the timber which

remains standing upon the land, gives Mitchell the right to retain all of the timber, whether cut or not, and precludes the assertion of any claim thereto on the part of Lilly's estate. They say Mitchell is entitled to have performance of the whole contract and cannot be required to accept part performance. Therefore, it is urged that, inasmuch as the creditors of Lilly do not offer to take and pay for the standing timber, but only that which has been cut, Mitchell may refuse to relinquish any of it. That a party to a contract who is in default and has broken it cannot, ordinarily, maintain an action on it is a correct proposition of law. Assuming that the contract is entire, and that Mitchell is entitled to full and complete performance of it, none of which need be determined here, since neither a claim to the standing timber on the one side nor for damages for not taking it on the other is set up, it remains to be seen whether the entirety of the contract precludes the claim set up on the part of Lilly's estate. The view thus presented by counsel only deals with the contract as an executory one, wholly unperformed, passing no title. It assumes not only that title has not vested, but also that it cannot until the contract is wholly performed; but that it imposes on the vendee the duty to cut, pay for and remove all the timber, and gives the vendor the right to demand performance of this duty. Failure of performance would give a right of action for damages, although no timber had been cut, or all of it had been cut except a small portion. But if the contract be entire, so that an action for damages for failure to perform any part of it would lie, it does not follow that the parties have not carried it to the point of execution so that title has passed to the purchaser of the timber. If so, then Mitchell cannot seize and withhold any timber, the title to which vested in Lilly before his death. The breach by the vendee does not divest that title out of him and revest it in the vendor, but it gives the latter his remedy by an action for damages upon the entire contract, although part of the property has passed beyond his reach by part performance and execution of the contract. For the timber the title to which has passed he could recover compensation at the contract price, and as to the unperformed part of the contract he would be entitled to damages for the breach. Contracts are either executory or executed. Executory con-

tracts of sale do not pass title; executed contracts do. *Elgee Cotton Cases*, 22 Wall. (U. S.) 180; *Mason* v. *Thompson*, 18 Pick. (Mass.) 305; *State* v. *O'Neill*, 58 Vt. 140. Whether title passes by a contract is a question of intention to be determined by the jury, when the terms of the contract are to be gathered from the evidence, and for the court when the agreement of the parties is free from dispute and the intent is plain. 24 Am. and Eng. Ency. Law (2d Ed.) 1048, 1049. If the intent of the parties to an entire contract, executory in the first instance, as this one is, to make partial deliveries and pass the title to the parts delivered, as they are delivered, such contract will be enforced according to the intent, and such partial delivery raises a presumption of intent to so pass the title. *Thompson* v. *Conover*, 32 N. J. L. (3 Vroom) 466; *Albemarle Lumber Co.* v. *Wilcox*, 105 N. C. 34; *Birge* v. *Edgerton*, 28 Vt. 291; *Totten* v. *Cooke*, 2 Met. (Ky.) 275; *Rolling Mill* v. *Rhodes*, 121 U. S. 255. Similarly, where a seller's lien is reserved by retention of possession and the contract is entire, part of the property may be released without payment, and the lien upon the residue retained, if such be the intention of the parties. *Young* v. *Austin*, 6 Pick. 280; *Merrill* v. *Hunnewell*, 13 Pick. 213; *Riddler* v. *Varnum*, 20 Pick. 280. *Simmons* v. *Swift*, 5 B. & C. 857; *Dixon* v. *Yates*, 5 B. & Ad. 313; *Hanson* v. *Meyer*, 6 East 614; *Parks* v. *Hall*, 2 Pick. 206.

Whether the title to the timber, as it was cut by Lilly, passed to him is a question of intent to be gathered from the terms of the contract, the nature of the property, its situation and the circumstances surrounding the parties to the sale. *Morgan* v. *King*, 28 W. Va. 1; *Hood* v. *Bloch*, 29 W. Va. 244. Owing to the peculiar nature of growing timber, contracts for the sale thereof, showing an intent to separate it from the soil immediately, or within a reasonable time, are generally deemed to pass the title to the timber upon the severance thereof, and not before. *Null* v. *Elliott*, 52 W. Va. 229; 28 Am. & Eng. Ency. Law (2d Ed.) 541. When the intent is to buy growing trees and allow them to remain upon the land and take its benefit by future growth, the sale is a sale of an interest in land, passing the title at once. Beach on Cont. section 540 and note. The act of severance is an important step. It changes the nature of the timber from real estate to personal property. *Null* v. *El-*

*liott,* cited. By the very act of cutting, the vendee takes actual manual control and possession of it. He acquires an additional interest in it by reason of his expenditure of money and labor in converting it into personal property. It is not to be assumed that he would incur the expense incident to the work of felling and hauling the timber without an intent to acquire at least an equitable interest in it. A rule of construction is that the seller is deemed to have parted with the title when he permits the purchaser to change the character of the property by spending money and labor on it. Jones on Liens, section 822. And this applies to timber contracts. *Douglass* v. *Shumway,* 13 Gray (Mass.) 498. That there should be partial deliveries of the timber as cut is plainly indicated by the terms of the contract. It provided that the timber which should be cut and hauled to the measuring place should be measured each month and not removed until fully paid for, thereby impliedly saying that, if measured and paid for, it might be removed each month as fast as cut. This negatives the theory that the contract should be entire as regards its execution. The covenant against removal does not preclude the passing of title. If the effect of it is to give the vendor a sort of constructive possession, that does not necessarily amount to a retention of title.

The general rule is that a sale is not complete until the property is so ascertained and designated that there can be no uncertainty as to its identity, quantity, quality and price. As long as anything remains to be done by the vendor or the joint action of both parties for the purpose of ascertaining any of these facts the title does not pass. *Morgan* v. *King,* 28 W. Va. 1; *Hood* v. *Bloch,* 29 W. Va. 244. But this rule is subject to one important exception, namely, the manifestation of a contrary intent by the parties to the contract. *Morgan* v. *King,* cited; *Hood* v. *Bloch,* cited. In *Haxall* v. *Willis,* 15 Grat. 434, Judge Daniels said: "There is, I think, a decided preponderance of authority in favor of the proposition, that where the subject matter of the contract has not only been completely ascertained and identified, but actually delivered, the mere fact that the weighing, counting or measuring, is yet to be done by the buyer, in order simply to ascertain the aggregate sum of money which he is to pay as the price, does not of itself show such a defect in the transfer of

the title as will prevent the risk of loss from being cast on the buyer." In *Macomber* y. *Parker*, 13 Pick. 175, the court said: "But where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing or measuring or counting afterwards would not be considered as any part of the contract of sale, but would be taken to refer to the adjustment of the final settlement as to the price. The sale would be as complete as a sale upon credit before the actual payment of the price." In *Crofoot* y. *Bennett*, 2 Com. (N. Y.) 258, in consideration of a previous indebtedness and of a new advance the plaintiff sold to the defendant forty-three thousand bricks to be taken out of an unfinished kiln, containing a larger quantity. He also delivered to the defendant formal possession of the yard and agreed with him to burn the kiln which he did and then executed to the plaintiff a bill of sale for all the bricks in the kiln. It was held that the defendant was entitled to take the forty-three thousand bricks, although they were not counted out or marked and separated from the residue. In *Kimberly* v. *Patchin*, 19 N. Y. 330, it was held upon a contract of sale of a specified quantity of grain, not separated from a mass, indistinguishable in quality or value, the title passes, the intention that it should do so having been manifested. A similar case is *Russell* v. *Carrington*, 42 N. Y. 118. Payment of the purchase money is not necessary to the vesting of title. "Neither actual delivery nor payment is indispensable." Bish. on Cont. section 1309; 2 Kent. Comm. 492. "There may be a constructive delivery of the goods sold which will pass the title, but which will not destroy the seller's lien. If goods be sold and counted out and set apart for the purchaser, there is such a constructive delivery that the title will vest in the purchaser and the property will be at his risk, and yet the seller has the indisputable right to refuse to deliver without payment." Jones on Liens, section 807. This is illustrated by the case of *Thompson* v. *Gray*, 1 Wheat. 75, in which Chief Justice Marshall delivered the opinion. Two persons had agreed with the managers of a lottery to take a large number of tickets, and to give security on the delivery of the tickets. Part of them were delivered and the residue were selected and put in a package, marked with the name of the

purchasers. One of the tickets in the package, not delivered, and not to be delivered until paid for, drew a large prize and the managers refused to deliver the tickets in the package on the tender of the price, and the court held that the property in the tickets had passed to the purchasers subject to a lien for the purchase money, Chief Justice Marshall said: "When they are separated from the mass of tickets, and those not actually delivered are set apart and marked as the property of the vendee,—what, then, is the state of the contract? It certainly stands as if the selection had been previously made and inserted in the contract itself. An article purchased in general terms from many of the same description, if afterwards selected and set apart with the assent of the parties as the thing purchased, is as completely sold, as if it had been selected previous to the sale, and specified in the contract."

The foregoing principles, applied to the terms of the contract, its clearly indicated purpose and the peculiar nature of its subject matter, lead irresistibly to the conclusion that the parties intended that the title to the timber should vest in the vendee as cut down, subject to a lien thereon in favor of the vendor for the purchase money, reserved by the clause prohibiting removal from the land before payment. Such lien is well known to the law as the seller's lien for purchase money and its nature is well defined in the numerous decisions of the courts in which it has been involved. Jones on Liens, section 800 *et seq.* Retention of possession of the property until payment, constructive or actual, is essential to its existence, and generally is the sole purpose of retaining it. Jones on Liens, section 806; *Farks* v. *Hall*, 2 Pick. (Mass.) 206; *Pickett* v. *Bullock*, 52 N. H. 354; *Welsh* v. *Bell*, 32 Pa. St. 12; *Obernier* v. *Core*, 25 Ark. 562. Where goods are sold, counted out and set apart for the purchaser, but not actually delivered into his possession, the title passes. There is constructive delivery sufficient to execute the contract, but the seller has a lien for the purchase money. *Southwestern &c. Co.* v. *Plant*, 45 Mo. 517; *Owens* v. *Weedman*, 82 Ill. 409. Here the property, by the very terms of the contract, passes into the hands of the vendee, goes under his personal dominion, and is wrought into a new form and nature by his acts, but on the lands of the vendor. But for the non-re-

moval clause, the vendor would have no lien.  He inserted it from necessity for the very purpose of reserving a lien. Jones on Liens, section 822.  By it he holds a sort of constructive possession sufficient to support a lien for his purchase money.

The untenableness of the first position taken by counsel for the appellee being thus disclosed, it becomes necessary to consider whether his claim under the forfeiture clause is well founded.  The obvious purpose of that clause was, not to enforce performance of the whole contract, the cutting of all the timber on the land; but to compel prompt payment for so much timber as should be cut, so as to prevent the accumulation of a large indebtedness and the felling of large quantities of timber without payment.  What other purpose could it have had?  The plain intent was to confer upon the vendor the power to stop all further work under the contract and put an end to it in case the vendee should fail to make prompt payment.  It was not anticipated that there should be a heavy forfeiture at any time.  Had the obligations of the contract been fully observed and discharged, there could have been little or nothing lost except one month's work and outlay and the five hundred dollars deposit, which was probably about the amount of contemplated damages in such case.

Such being the nature and obvious purpose of the forfeiture clause, our conclusion is that the record as it stands, shows a *prima facie* case of waiver of forfeiture for failure to measure and pay for the timber each month as it was cut. Mitchell stood by and allowed this large expenditure in the cutting and hauling of the timber and construction of skids and tramways with the attendant accumulation of indebtedness to merchants, employes and sub-contractors, without demanding any measurement or payment for the timber cut, relying no doubt, for his protection, upon the provision which inhibited removal of the timber until paid for.  He permitted the very thing to be done which the forfeiture clause was intended to prevent.  To permit him now to assert a forfeiture and claim the benefit of all the money and labor expended upon that timber would operate as a fraud upon the rights of Lilly's estate to which the creditors have a right to look for satisfaction of their demands, and be a perversion of the forfeiture clause from its plain purpose.  His silence

amounted to a representation of his willingness to forego the monthly measurement and monthly payment, causing Lilly to do that which he would not otherwise have done, namely, to go on with his operations at great expense. If he intended to assert his rights under that clause, he was bound to stop and give notice of that intention in view of his knowledge of the expenditures which were being made upon the faith of his silence and acquiesence.

"Also, in the same class of cases, and upon the same equitable grounds, if there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary." Pom. Eq. Jur. section 451. This text has been approved and applied in the case of *Thukill* v. *Myers*, 36 W. Va. 639.

As it is plain that Lilly took title to the felled timber and the benefit of the forfeiture clause has been waived, Mitchell must find some ground other than those of entirety of contract and forfeiture. What can it be? Breach of a contract by one party sometimes, if not always, confers upon the other the right of rescission. *Summer* v. *Parker*, 36 N. H. 449; *Hill* v. *Hovey*, 26 Vt. 109; *Dodge* v. *Greeley*, 31 Me. 343; *Basten* v. *Butler*, 7 East 579. But that cannot be exercised without a restoration of the *status quo*. *Gay* v. *Alter*, 102 U. S. 79; *Bank* v. *Groves*, 12 How. (U. S.) 51; *Prebble* v. *Bottom*, 27 Vt. 249; *Allen* v. *Webb*, 24 N. H. 278; *Bailey* v. *Fox*, 78 Cal. 389. Mitchell could not avail himself of this right without putting Lilly's estate as nearly in the condition which Lilly occupied before he cut the timber as possible. A contract must be wholly rescinded or not at all. *Potter* v. *Titcomb*, 22 Me. 300; *Wolcott* v. *Heath*, 78 Ill. 433; *Hendricks* v. *Goodrich*, 15 Wis. 679. He says he took charge of the timber with Lilly's consent, but Lilly's inability to bestow gifts or relinquish rights so as to prejudice his creditors is so clear and undoubted as to render discussion unnecessary.

From these conclusions it results that, if Mitchell has any title to the property, it is that of mortgagee, and, as such, he has denied the existence of any interest in the property on the part of the mortgagor, and attempted to sell it as his

own. If he were an express trustee, this would be sufficient ground for ousting him by the appointment of a receiver. *McCandless* v. *Warner*, 26 W. Va. 754. However, that may be, he is charged with no active duty in respect to the timber for the protection of the interest therein of Lilly's estate. The administratrix has refused to take charge of it. The creditors can neither do so nor maintain any sort of action at law for the timber or its proceeds because they do not represent the estate, although entitled to resort to the assets for satisfaction of their claims against it. Therefore equity must lend its aid by appointing a receiver to put the timber in marketable condition and sell it. There is nobody else to do it. This makes a clear case for the exercise of such jurisdiction. *Mathney* v. *Ferguson*, 55 W. Va. 656 (47 S. E. 886); *Poling* v. *Huffman*, 39 W. Va. 320; *Wilson* v. *Straight*, 46 W. Va. 651; *Tabb's Curator* v. *Cabell*, 17 Grat. 160.

What equities or legal rights S. M. Hudson may have in respect to the timber cannot be inquired into here. The cause did not progress far enough in the court below to raise these questions. The same observation is to be made as to the five hundred dollar deposit, which the contract bound Lilly to make. Whether anything was paid before any timber was cut does not appear. None of these matters could be finally disposed of upon mere affidavits in the absence of an agreement to submit on affidavits in lieu of evidence regularly taken.

For the foregoing reasons the decree complained of must be reversed and the cause remanded for further proceedings according to the principles herein stated and the rules and principles governing courts of equity.

*Reversed.*