# CHARLESTON.

N. R. SHARP *et als.* v. GRANVILLE CAMPBELL.

Submitted November 8, 1921.   Decided November 15, 1921.

1. APPEAL AND ERROR—*Trial Court's Finding Based Upon Sufficient Evidence Will not be Disturbed.*

   The finding of a trial court that a sale of personal property, evidenced by a written contract incomplete and uncertain as to time of payment, was absolute and not conditional, and made upon credit, though not upon time, supported by conduct of the parties and other facts and circumstances tending to prove its correctness, cannot be disturbed by the appellate court.   (p. 529).

2. SALES—*Where Seller Has Done all the Contract Requires, Title Passes Whether Payment Has Been Made or Not.*

   If the vendor of personal property has done all that execution of the contract requires him to do, the title passes,

whether payment has been made or not, unless the contract
provides otherwise in express terms or by necessary implica-
tion (p. 530).

3.   SAME—*Rightful Stoppage in Transitu Does Not Require Buyer
to Enter into New Contract While Wrongful Stoppage Con-
stitutes Breach by Seller.*

A rightful stoppage of goods *in transitu* does not work a re-
scission of the contract of sale, nor require the vendee to enter
into any new or different contract, in order to obtain the
goods, except in respect of the matter of payment.   It merely
restores the seller's lien relinquished by the shipment, and,
if the vendee promptly tenders payment, the vendor must ac-
cept it and deliver the goods, and his refusal to do so renders
him liable for a breach of his contract.   A wrongful stoppage
*in transitu* amounts to no more than a breach of the contract
by the vendor.   (p. 529).

4.   SAME—*Stoppage in Transit Does Not Rescind Executory Con-
tract or Relieve Seller on Buyer's Prompt Tender of Pay-
ment.*

Nor does the stoppage of a shipment of goods under an exe-
cutory contract rescind the contract or relieve the vendor, if
the vendee promptly tenders payment.   (p. 530).

Error to Circuit Court, Harrison County.

Action by N. R. Sharp and others against Granville Camp-
bell in a Justice's Court, where plaintiffs prevailed, and
upon appeal to the circuit court there was a judgment for
plaintiffs, and defendant brings error.

*Affirmed.*

*H. G. Kump,* and *Charles C. Scott,* for plaintiff in error.
*William W. Walters,* for defendants in error.

POFFENBARGER, JUDGE:

The sole inquiry arising on this writ of error goes to the
question, whether the trial court, on a submission to it of is-
sues raised between the parties, has made a correct finding
or one that cannot be disturbed here, under the rules of pro-
cedure, the facts being somewhat dependent upon conflicting
oral evidence.   No complaint as to anything else is found in
the petition or the brief filed for the plaintiff in error.

The action commenced in a justice's court, where the plain-

tiffs prevailed, and tried again in the circuit court, on an appeal, with a like result, except as to the amount of the judgment, was instituted to recover damages for non-delivery of 100 bushels of potatoes, sold by the defendant to the plaintiffs, at $3.50 per bushel, in Randolph County, and to be shipped to Clarksburg in Harrison County. They were shipped under a bill of lading which does not appear in the record, but it seems to be conceded that they were consigned to the vendees, on the one hand, and, on the other, that the consignees were to pay the freight. The breach of contract, if any, occurred at Clarksburg, after arrival of the shipment. After delivery of the potatoes to the carrier, the vendor undertook to notify the vendees, the Country Produce Company, of the shipment, by telephone, but was unable to locate them. Fearing something wrong, he went to Clarksburg, before it arrived, forbade delivery by the carrier, and, through the agent by whom the purchase had been made, succeeded in finding Sharp, one member of the firm. The firm had no conspicuous place of business in the city. It conducted its business in the basement of Sharp's residence situated in a suburban section. Still uneasy and fearful, in view of these facts, the vendor tried to induce Sharp to pay for the potatoes in advance of their arrival. Sharp offered to pay $100.00 on them and give his post-dated check for the balance. This offer was declined and the parties concluded to await arrival of the shipment. On the day of its arrival, or soon afterward, the vendor again appeared early in the forenoon, and, again through the agent, located Sharp and apprised him of the arrival and insisted upon acceptance of the potatoes and payment. Sharp told him he would be unable to do so, before 2 o'clock P. M. or about that time, because he was otherwise engaged. Campbell waited at the Court House, until a few minutes after 2 o'clock, and, Sharp not having arrived, sold the potatoes to Shingleton Brothers, at $4.00 per bushel, less the freight. If the testimony of Sharp and his brother is true, they were at the railway station before 2 o'clock, with a truck driven by the latter, to take possession of the potatoes, and the former had provided himself with $400.00 in cash with which to pay for them.

Not finding Campbell there, Sharp went to the Court House, seeking him, and arrived soon after he had left for the station.    On his return to the station, he found Campbell there, paying the freight, claiming a breach of the contract by the vendees and ordering delivery of the potatoes to Shingleton Brothers from whom he had had an offer of purchase, before the shipment arrived.    Sharp protested against the delivery to Shingleton Brothers, and says he produced the money and tendered payment, and the court could have found that the time of the tender, if made as Sharp says it was, without contradiction, was prior to the delivery.

There was a written, but very informal, contract between the parties, in pursuance of which the shipment was made. As to time of payment it is silent, unless the incomplete phrase, "which due arrival," at the conclusion of it, can be deemed to have been intended for application to such time. Whether it was or not is a question of fact, the trial court has passed upon.    If it found that the sale was made on credit, but not on time, that is, that delivery was to be made in advance of payment, but payment to be made immediately afterward, its finding cannot be disturbed.    Likely the bill of lading evidenced shipment to the vendees, for the vendor deemed it necessary to stop the potatoes *in transitu.*    If he had consigned them to himself, to be delivered to the vendees, pursuant to an assignment of the bill of lading, stoppage *in transitu* would have been unnecessary, for, in that case, delivery could not have been made without his consent. The vendor must have thought he had authorized delivery in advance of payment, else he would not have deemed it necessary to forbid it.

If the contract was one of sale on such credit, as the court could have found it was, and not a conditional sale, what afterwards transpired between the parties did not change it. There was no consideration for any alteration of it, and the seller's exercise of his right of stoppage *in transitu,* if any, and the court could have found there was no justification for it, because there is no proof of insolvency, did not effect any alteration thereof.    It merely restored constructive possession with a lien to secure payment of the purchase money.

*Gibson* v. *Carruthers,* 8 M. & W. 321, 338; *Morris* v. *Shryock,* 50 Miss. 590; *Newhall* v. *Vargas,* 13 Me. 93; Mechem, Sales, sec. 1526.    It did not work a rescission of the contract of sale and render it necessary for the vendees to enter into a new one on different terms, in order to obtain the potatoes. *Cross* v. *M'Donnell,* 44 N. Y. 661; *Rucker* v. *Donovan,* 13 Kan. 251; *Rowley* v. *Bigelow,* 12 Pick. (Mass.) 307; *Rogers* v. *Thomas,* 20 Conn. 53; *Jordan* v. *James,* 5 Ohio 88; Mechem, Sales, sec. 1612.    If they came prepared and willing to pay and offering to do so, while the goods were still actually or constructively in the possession of the vendor, he was bound to accept the money and deliver the goods to them, or make himself liable for damages by his refusal to do so, even though he had rightfully stopped the shipment, unless there was unreasonable delay in the offer of payment, and there was none.

It is equally manifest that the court could rightfully have found that the title to the potatoes passed by delivery thereof to the carrier for shipment to the vendees.    The vendor says they were to be taken upon the weight as given by him.    If that be true, nothing remained to be done by him, in execution of his contract, after he had delivered the goods to the carrier, under a consignment to the vendees.    Under such circumstances, the title passes, in the absence of an express .stipulation to the contrary.    *Acme Food Co.* v. *Older,* 64 W. Va. 255, 268; *Buskirk* v. *Peck,* 57 W. Va. 360; *Morgan* v. *King,* 28 W. Va. 1; *Hood* v. *Bloch,* 29 W. Va. 244.

Even, if the sale was executory and conditioned upon-payment before delivery, so as to preclude passage of the title, the vendor's power to stop his own goods *in transitu* did not relieve him from his contract, nor change its terms, unless the vendees were insolvent or refused performance.    *Pattison* v. *Coulton,* 33 Ind. 240; Mechem, Sales, secs. 1614 to 1617. And the court could have found, upon the evidence, that there was no insolvency, nor any refusal to pay within the time allowed by the terms of the contract.    On the first interview between the vendor and one of the vendees, the latter avowed his eagerness and ability to take and pay for the goods, on arrival.    After arrival, he came with the money and offered payment on the day of the demand therefor.

The vendor's nervousness over the situation imposed no new obligation or duty upon the vendees, nor were they bound to respect his mere convenience.     There was no occasion for his great haste, in reselling.     He had a standing   offer from Shingleton Brothers and could safely have waited until 3 o'clock or even 4 o'clock, and then resold and caught the train by which he desired to go home.     Besides, his assembling of witness to the time of his leaving the Court House, the slightness of his allowance of time after 2 o'clock, the haste with which he resold, his refusal to deliver on tender of the money, while the goods were still within his power, and other circumstances strongly tend to prove lack of good faith and an ulterior motive on his part.

Subsequent insolvency of Sharp, one of the vendees, is not shown in the record.     We cannot take it from the brief filed, if it is material, and we express no opinion as to whether it is or not.

Perceiving no error in the judgment, we will affirm it.

*Affirmed.*