## CHARLESTON.

### J. L. FURROW v. JOHN T. BAIR

Submitted September 30, 1919. Decided October 7, 1919.

1. SALES—*Time of Passing of Title—Question of Intent.*

The time at which title passes under the terms of a contract of sale is a question of intent to be gathered from the terms of the contract, the nature of the property, its condition and situation, and the purposes sought to be accomplished thereby. (p. 658).

:2. LOGS AND LOGGING—*Executory Contract—Sale of Timber—Title Does Not Pass Until Severance From Land.*

A writing purporting to convey the standing timber on a tract of land for a consideration of $4.50 per thousand feet, to be ascertained by measuring the logs after severance, and to be paid for as the same is shipped, and reserving a lien upon the manufactured product for any unpaid purchase money, but reserving no lien upon the standing timber for the purchase price, and giving the purchaser twelve months within which to cut such timber, after which all timber remaining standing shall revert to and become the property of the landowner, properly construed is an executory contract for the sale of such timber, and the title thereto does not pass until the same is severed from the real estate. (p. 658).

:3. SAME—*Breach of Contract—Cutting Standing Timber—Recovery of Damages.*

The provision that the purchaser shall have twelve months within which to cut such timber is a covenant to perform the contract within that time, and in the event of his failure in that regard the seller, if he is injured thereby, will have his action to recover damages therefor. (p. 656).

4.  SAME—*Measure of Damages—Breach of Covenant—Standing Timber.*

The measure of damages for the breach of such a covenant is the excess of the purchase price over and above the value of the timber not removed at the time of the breach. (p. 661).

5.  SALES—*Method for Determination of Price of Standing Timber Not Removed as Agreed.*

Where in a contract for the sale of personal property the price to be paid is to be determined by applying an agreed unit price to the number of such units, to be ascertained by measurements to be made at a certain time, and the purchaser by removing or disposing of the property before such measurements are made puts it beyond the power of the parties to fix such purchase price in the manner agreed upon, the seller will be allowed to resort to other evidence to determine the quantity delivered. (p. 661).

Error to Circuit Court, Raleigh County.

Action by J. L. Furrow against John T. Bair and others. Verdict and judgment for plaintiff, and defendants bring error.                    *Reversed, and cause remanded.*

*John M. Anderson,* for plaintiffs in error.

*A. P. Farley, C. M. Ward,* and *Kyle D. Harper,* for defendant in error.

RITZ, JUDGE:

The plaintiff J. L. Furrow and his brother C. S. Furrow, being joint owners of a tract of land containing 147½ acres, upon which there was some standing timber, the said J. L. Furrow acting for himself and as agent for his brother, on the 5th day of May, 1914, entered into a contract with the defendants for the sale of this timber. Shortly after the making of the contract the defendants moved their mill upon the land and began cutting and removing the timber. It appears that only a small part of the 147½ acres was timbered, and that the timber which was standing thereon was divided by cleared land into two tracts. Because of the fact that the determination of the questions arising in this case involve the construction of the contract, we set the same out *in haec verba.* It is as follows: "THIS CONTRACT OF SALE

made and entered into this the 5th day of May, 1914, by and between J. L. Furrow 'in his own behalf and right, and the said J. L. Furrow for and in behalf of C. S. Furrow, for whom the said J. L. Furrow is the duly authorized agent for the purposes of this contract, party of the first part, and J. T. Bair and L. B. Phillips, parties of the second part, all of Raleigh County, West Virginia. WITNESSETH. That for and in consideration of the sum of $1.00 and of the further stipulations and agreements hereinafter contained, the said party of the first part for himself and for the said C. S. Furrow, whose duly authorized agent he is for the purposes of making this sale, does hereby grant, sell and convey unto the parties of the second part, with general warranty of title, all the merchantable timber of every kind, on the tract of land known as the ''Albert Furrow tract, of 147½ acres of land,'' lying in Shady Springs District, in the said County of Raleigh, and adjoining the C. H. Prince tract of land, and land owned by the Beaver Coal Company, with the right to remove said timber and to manufacture the same on said tract of land. The said parties of the second part, as part consideration for the said timber and rights-of way above mentioned, hereby assign to the party of the first part a certain note now belonging to them, dated March 30th, 1914, given for the sum of Five Hundred and Twenty ($520.00) Dollars signed by C. P. Phillips, made to the order of George Gadd, payable in six months, with interest from April 7th, 1914, until paid, and endorsed by G. W. Gadd.

The parties of the second part further agree to pay for said timber the sum of $4.50 per thousand feet, the number of thousand feet to be ascertained by log measure, to be determined by Doyle's Rule. It is further agreed that after the value of the said amount of Five Hundred and Twenty ($520.00) Dollars is obtained by the said second parties, of the said timber, at the said price of $4.50 per thousand feet, that the payments shall be made to the said first party at the said rate of $4.50 per thousand feet, as the said second parties shall ship the said timber. It is further agreed between the parties hereto that the said second parties shall be given twelve months in which to cut the said timber,

after the expiration of which twelve months all timber remaining standing on the said land shall revert to and become the property of the said J. L. Furrow and C. S. Furrow. The said first party further grants to the said second parties the right to use the said tract of land for the cutting and removal of the said timber and lumber manufactured therefrom. The parties of the second part further agree that they will use due care in the cutting of said timber, so as to secure as much lumber as possible, consistent with good management. It is further agreed that all manufactured lumber of every kind shall stand good for any money due under this contract, and the party of the first part reserves the first lien on said manufactured lumber, for the recover of any money due thereon.''

It will be noticed that the contract provides that the timber is to be cut and removed within twelve months from its date, and that any timber standing after that time shall revert to the owners of the land. It appears that the defendants cut all of the timber off of one of the segregated boundaries, but that the other small area covered with timber known as the Parker Hollow lot was not cut at the time the contract expired. Subsequent to the making of this contract C. S. Furrow assigned all of his interest therein to the plaintiff J. L. Furrow. The defendants were not allowed to cut the timber which was standing at the expiration of the contract. This suit was then brought by J. L. Furrow to recover the price of the timber. His theory is that the contract above referred to is a deed which vested the title in the timber in the defendants at the time of its delivery, and that he was entitled to recover the purchase money, regardless of whether the timber was cut or not, and if his construction of the contract is correct this would be the case. His contention was that not only had the defendants not cut all of the timber on the land, but that they had not paid for all that they had cut. Upon the trial it seems from one of the bills of exception that the jury found that payment had been made for all timber cut and removed, but under the instructions of the court the jury found for the plaintiff for the price of the Parker Hollow timber, basing their verdict

upon the estimated amount thereof at the price fixed in the contract. The only substantial question for solution is the proper construction of the contract above set out. If it was a deed which vested in the defendants the title to the timber upon its delivery, then the theory upon which the trial proceeded was correct. If, on the other hand, it was an executory contract for the sale of this timber under which the title did not vest in the defendants until the same was cut, the judgment complained of is wrong.

This paper, it is true, contains words which are ordinarily used in a deed. It attempts to grant and convey the timber with general warranty of title, but is this sufficient of itself to carry the title to the timber with the delivery of the paper? The purpose, of course, of all construction is to arrive at the intention of the parties, and this must be done from the paper itself where there is no ambiguity upon the face of it, and it can hardly be said that there is ambiguity upon the face of this paper. Ordinarily it is necessary to a completed contract of sale that the property intended to be sold be ascertained and designated, so that there may be no uncertainty as to its identity, its quantity, quality, and its price. As long as anything remains to be done by the vendor, or the joint action of both parties, for the purpose of ascertaining any of these facts, the title does not pass. Of course this does not mean that all of these elements must be absolutely certain, but they must be so determined as that all that remains is some calculation or measurement in order to determine the agreed price, or the quantity of the article sold. It has been repeatedly held that where personal property is the subject of the sale, and it has been delivered, the fact that the amount thereof must be ascertained by measurement or weight does not prevent the title from passing at delivery, but those exceptions, which are referred to in the case of *Buskirk Brothers* v. *Peck,* 57 W. Va. 360-368, have no application to the case here. Taking this paper altogether the question is, what was the intention of the parties as to the passing of the title to the subject-matter of the contract? In the first place, while it is in some respects in the form of a deed, it is made by one joint owner on behalf of himself

and his co-owner, without exhibiting any authority under seal clothing him with the power to convey the title of his co-owner. The purchase price is not ascertained, nor can it be ascertained from any calculation or measurement which could be made at the time. Under the terms of the contract it could only be ascertained after the timber is severed and measured in the log. If the determination of the purchase price depended simply on counting the trees, or some similar operation, then it might be said that it was not indefinite, but such is not the case here. The ascertainment thereof depends upon something to be done with the subject-matter of the contract. It must be changed in its form before it is known how much is to be paid. Further than this the time of payment is not at all certain, depending entirely upon when the timber is cut and ready to ship, it being provided under the contract that the same shall be paid for when it is shipped. This it might be assumed would be within the twelve months, provided the parties carried out their contract, and cut all the timber within that time, but even assuming that they severed all of the timber from the tract of land within the twelve months, and the title to it had vested in the defendants, still the purchase money would not be payable until the timber had been shipped, which might be long after the twelve months period, for under our decisions it is held that where a limited time is given within which to remove timber the purchaser, if he has severed the same from the land within the time provided in the contract, may take the same off after the expiration of that period. Again it will be seen from an examination of the contract that a lien is reserved upon the manufactured lumber of every kind for any unpaid purchase money therefor. It would be strange if the owner of the land intended to grant the timber as it stood upon the tract of land that he reserved no lien thereon for the purchase money, but did reserve in the contract a lien upon the manufactured product for purchase money. This, it seems to us, makes it clear that there was no intention to pass title until after the timber was cut. In all of the cases cited by the defendant in error in support of the judgment below, the amount of the purchase money was a de-

finite, fixed sum at the time the contract was entered into. There was nothing left to be done except for the purchaser to pay it, and it was accordingly held in those cases that the title to the timber passed with the delivery of the deed. This case is more like the case of *Buskirk Brothers* v. *Peck,* 57 W. Va. 360, where because of the uncertainty as to the amount of the purchase money it was held that the title did not pass until the timber was severed, for until that time the contract was simply an executory one. In the case of *Wilson* v. *Buffalo Colllieries Company,* 79 W. Va. 279, we had under consideration a contract for the sale of standing timber. In that case all of the elements were certain, definite and fixed at the time of the execution of the paper, and it was held that it passed the title on its delivery, but it was likewise held in that case referring to a second contract involved, that: ''A sealed contract reciting a sale and conveyance of timber, for a nominal consideration, but not formally granting or conveying the same, and containing covenants on the part of the party of the second part to sever, manufacture and remove the timber, and pay for it at certain prices, as they manufacture it into lumber, is not a deed and does not pass the legal title to the timber.'' That is the case here. While this paper in some of its aspects is in the form of a deed, when all of its parts are read together, we are forced to the conclusion that it was not the intention of the parties to pass title to any of the timber until it was severed from the land. The time fixed for determining the purchase price was after the severance of the timber, and the fact that the sellers reserved a lien upon the manufactured product, and no lien upon the standing timber, for the purchase money is practically conclusive that the intention was to pass the title after the timber was cut from the land. This being the case the provision in the contract for removing the timber within twelve months is a covenant to perform the executory contract within that time. It is an agreement upon the part of the defendants that they will cut all of the timber within twelve months. If they fail to perform their covenant in this regard they are, of course, liable in an action for such damages as result to the owners of the land.

The measure of damages for the breach of this covenant would be the difference in the value of the timber standing upon the land at the expiration of the twelve months and the price agreed to be paid for the said timber as it was severed, provided always that the timber so standing was worth less than the price agreed to be paid. *McCorkle & Son* v. *Kincaid*, 121 Va. 546.

There is some criticism by the plaintiff in error of the declaration in this case. It consists of the common counts stated in several different forms and of a special count. Upon the theory of the plaintiff no special count was necessary. If the paper was a deed passing the title to the standing timber by its delivery, the recovery of the purchase price could be had upon the common counts. Upon the theory, however, that this paper constitutes an executory contract for the sale of the timber, plaintiff may recover for such timber as has been cut, or so much thereof as remains unpaid upon the common counts, but to recover damages for the failure to perform the covenant to remove the timber within the time provided in the contract it would be necessary to declare specially, and if the plaintiff is advised to do so he can, upon the cause being remanded, file and amended count presenting his claim for damages for this breach.

Criticism is also made of some rulings of the court upon the admission of evidence of estimates of the amount of timber which had been cut and removed by the defendants. The plaintiff's contention was that the defendant had not measured all of the timber which he cut and removed from the land, and had not accounted therefor. The logs were gone, and it was impossible to measure them. To establish his contention he introduced the testimony of some witnesses to the effect that some logs were sawed which had not been measured, and also the testimony of witnesses who estimated the timber cut from the tract of land by measuring the stumps, and the supposed length of the logs. He also introduced an estimate of a party who went over the timber and inspected it prior to the time it was cut and made an estimate of the amount thereof. Of course, this was not the method provided in the contract for determining the amount to

be paid, but if the plaintiff's contention is true that the defendants cut and removed timber that they did not measure and account for, it is evident that the method provided in the contract for ascertaining the amount of such timber is no longer available, and the only thing which the plaintiff can do is to resort to the best evidence obtainable for the purpose. The probative force of such evidence is, of course, for the jury. It is largely speculative in its nature, and could not be resorted to upon any other theory than that the alleged fraudulent acts of the defendants have put it beyond the power of anyone to secure the measurements in the manner provided for in the contract.

It follows from what we have said that the judgment of the circuit court will be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed, and cause remanded.*