# CHARLESTON.

D. E. LUTZ *v.* RENA U. CURRENCE *et al.*

Submitted May 9, 1922.    Decided May 16, 1922.

1. CONTRACTS—*Failure of One Party to Execute Contract to Perform an Incidental Covenant Will Not Excuse the Other From Performing Substantial Covenants.*

   The failure upon the part of one party to an executory contract to perform a subordinate and incidental covenant or condition will not excuse the other party from performing the substantial covenants and agreements provided to be performed upon his part.    (p. 230).

2. LOGS AND LOGGING—*Provision in Contract for Sale of Logs, That Person Named was to Saw Them Into Lumber, Held Incidental, so That His Refusal Would Not Excuse Owner from Performance.*

   Where the owner of a tract of land upon which there is some merchantable timber enters into a contract with another, by which he agrees to sell him the timber and cut it into logs, and by which the other agrees to haul the logs to a mill to be located upon the land and cut the same into lumber, and pay the owner of the land a certain sum therefor, measured by the quantity of lumber manufactured from the logs so cut, the sawing and scaling of the lumber to be done by a certain named person, the refusal of the person so named to do the sawing and scaling will not excuse the owner of the land from performing the contract upon his part.    The condition in the contract providing for the sawing and scaling of the lumber by a particular person is subordinate and incidental to the main purpose of the contract, and the failure to perform it does not justify nonperformance of the contract upon the part of the other party.    (p. 230).

3. SAME—*Measure of Damages for Breach of Contract to Sell Logs Stated.*

   One who enters into a contract by which he agrees to sell the timber upon a certain tract of land owned by him and to cut the same into logs as directed by the other contracting party for the consideration of a certain price per thousand feet board measure, to be determined after the logs are manufactured into lumber by the other party at a mill to be operated upon the premises, will be liable to such other for the difference between the market price of such lumber as would

have been produced under the contract and the amount which it would have cost to produce it, including as a part of such cost the amount which the owner was to receive for the timber and for cutting it into logs, in case he refuses to perform the contract.   (p. 231).

Error to Circuit Court, Randolph County.

Action by D. E. Lutz against Rena U. Currence and others, and from a judgment nil capiat, the plaintiff brings error.

*Reversed and remanded.*

*R. H. Allen and W. B. & E. L. Maxwell,* for plaintiff in error.

*Talbott & Hoover,* for defendants in error.

Ritz, Judge:

In this suit to recover damages for breach of an executory contract by which certain timber was to be cut and manufactured into lumber, the court upon the trial of the case directed a verdict in favor of the defendant, and rendered the judgment of *nil capiat* thereon complained of upon this writ of error.

The defendants Rena U. Currence and Henry Currence, being the owners of a tract of 153 acres of land, upon which there was some merchantable timber, on the 9th of April, 1920, entered into a contract in writing with the plaintiff D. E. Lutz, by the terms of which they sold to the said D. E. Lutz all of the merchantable timber upon said 153 acres of land, and agreed to cut the same into logs, in accordance with the instructions of the said Lutz, or his manager, for all of which they were to receive the sum of $6.25 per thousand feet board measure.   The contract further provided for the erection of a mill or mill camps upon the land, and gave the right to haul the logs thereover. There was paid to the defendants at the time the contract was entered into the sum of $200.00 in cash, which it was provided was to be refunded by deducting from the $6.25 per thousand feet which the defendants were to receive un-

der the contract, one dollar on the first 200,000 feet of lumber cut under the contract.     It was provided further that William Wade was to do the sawing.     The plaintiff further agreed to saw into lumber not less than 25,000 feet during the month of May, and not less than 60,000 feet per month thereafter, but it was provided that if for any reason he could not get ready, then the 25,000 feet must be cut during the month of June, 1920, and if he should fail to cut at least 25,000 feet during the month of June, the contract was to be at an end, and plaintiff was to forfeit to the defendants the sum of $50.00, and the remainder of the $200.00 advanced was to be returned to him.     It was further provided that if the defendants should become totally disabled, or said Henry Currence should depart this life, the plaintiff might then cut the timber and pay for such as he cut under these circumstances only the sum of $4.00 per thousand feet board measure, instead of $6.25.     It appears that William Wade, the party named in the contract who was to do the sawing, owned a mill being operated in the neighborhood.     Immediately upon entering into the contract the plaintiff made a contract with Wade by which Wade agreed to do the sawing in accordance with the terms of the contract above mentioned.     About the middle of May, observing that Wade was making no effort to perform his contract in the way of getting his mill upon the ground and getting ready, the plaintiff, upon inquiry, was informed by Wade that he did not intend to perform his contract, and would not saw the timber.     Plaintiff thereupon immediately procured another mill, and moved part of it upon the premises, and had the remainder of the machinery ready to be moved at the time the defendants declined to permit the work to proceed.     On the 12th day of June the plaintiff, having his mill in such shape that he could tell definitely just when he would begin operations, and having made a contract with another party to begin hauling the logs as soon as the same were cut, gave notice to the defendants that he was ready to begin operations not later than the 21st of June, and would be in position to cut at least the 25,000 feet required

by the contract during that month, and called upon them to begin at once cutting the timber into logs under the contract so that he might not be delayed when he was ready to begin.    He gave directions as to the lengths he desired the logs to be cut and the points at which the cutting was to begin.    This notice was received by the defendants on the 15th of June, and on the following day they advised the plaintiff that they were ready to begin cutting the timber as soon as William Wade was procured to do the sawing and scaling as per the contract.    The plaintiff immediately notified the defendants in writing that he had entered into a contract with Wade to do the sawing and scaling, in accordance with the terms of the contract between them, but that Wade had refused to do the work as he had agreed to do, and that plaintiff had procured another mill and was ready to set the same up, and would be in position to begin sawing on the 21st of June.    He also advised defendants that he would see that the logs were properly sawed, and they would be given every opportunity they desired to see that they were properly scaled and the lumber properly measured.    No answer was made to this communication, but when the plaintiff's employes went to go upon the premises for the purpose of setting up the mill, parts of which had already been delivered thereon, they were met with a notice warning them to stay off of the premises unless they were employed by William Wade.    The plaintiff heeded this notice, and did not attempt to force an entrance upon the defendants' property for the purpose of erecting his mill or carrying out the contract.    This suit was then instituted in which the contract is set up and the facts as above stated, and claiming that by reason of the failure on the part of the defendants to carry out the contract upon their part, and the failure of the plaintiff to get the timber under the contract he was substantially injured.    Upon the trial plaintiff offered evidence to show that to carry out the contract upon his part by paying the defendants the amount he had agreed to pay them for the logs, and for cutting them, to-wit, $6.25 per thousand, and sawing them into lumber at the mill,

would have cost him approximately $25.00 per thousand feet; that at the market price of lumber, such as would have been produced from this timber, he would have made about $25.00 per thousand feet, and there was upon the land, according to his estimate, about 300,000 feet of the lumber. The court declined to permit this evidence to be introduced. He then offered evidence to prove that he had laid out considerable money in the way of preparing to execute the contract upon his part; that he had spent a considerable sum in purchasing a sawmill, in having it moved upon the ground, and had incurred a liability to the man whom he had employed to haul the logs to the mill, all of which evidence was likewise rejected, and the court, upon motion of the defendants, directed the jury to return a verdict in their favor, upon which the judgment complained of was rendered.

The defendants contend that the plaintiff is not entitled to recover any damages in this case, for the reason that there was no breach of the contract upon their part, they being under no obligation to cut the logs unless William Wade was to do the sawing and scaling; and further, that even though they were guilty of a violation of their contract by refusing to cut the logs and get them in shape so that the plaintiff could saw them into lumber, still the evidence offered by the plaintiff did not show that he was entitled to any recovery for the reason that the contract was a sale of real estate, and that the measure of damages would be only the purchase money actually paid, in the absence of a showing of fraud, which was, according to their contention, only the sum of $150.00 after deducting the fifty dollars which they claimed as a forfeiture, and which sum of $150.00 was tendered to the plaintiff and paid into court; and further, that even though this contract be treated as a contract for the sale of personality, the plaintiff did not prove any proper measure of damages; that the measure of his damages in such case would be the difference between the market value of the logs after they were cut in the woods and the price which the plaintiff was to pay them therefor, and that even if this should not be the correct measure of dam-

ages then the correct measure of damages would be the difference between the market price of the lumber which was contemplated to be manufactured under the contract and what it would have cost the plaintiff to produce it thereunder, and that the evidence introduced did not show this.

Is there merit in the defendant's contention that they are excused from the performance of the contract because the plaintiff was unable to get William Wade to do the sawing and scaling? If there is, then the judgment of the court complained of is clearly right. The plaintiff contends, however, that this provision in the contract is a subordinate and insubstantial one, the failure to perform which would not justify the defendants in refusing performance of the contract upon their part, while the defendants contend that this was one of the material and substantial considerations for the contract at the time it was entered into. It does not occur to us that this provision of the contract forms any substantial or material part of it. It is evidently only a provision by which the parties agreed upon a man who they thought was competent to saw and measure the lumber for them. It really meant no more when properly interpreted than that the lumber should be sawed and scaled by a competent man. The failure upon the part of one party to an executory contract to perform an independent or immaterial condition or covenant thereof will not excuse performance upon the part of the other party, and particularly is this true where the failure to perform is not the result of any bad faith. In 3 Elliott on Contracts, at § 2046, p. 230, it is said: "And where the stipulation does not go to the root of the contract so that a failure to perform it would render the performance of the rest of the contract a thing different in substance from what was contracted for, there is ordinarily not such a breach as will authorize an abandonment of the contract by the other party." And Professor Williston in his work on Contracts, vol. 2, § 841, at p. 1610, says that, "A breach of a separate collateral promise of minor importance will not justify refusal by the other party to perform." See also *Kauffman* v. *Raeder,* 108 Fed. 171,

and *Oscar Barnett Foundry Co.* v. *Crowe,* 219 Fed. 450.
This provision for the sawing and measuring of the lumber, so far as it provided that it should be done by a particular person, was not a substantial part of the contract.
The work could just as well be done by any other competent man as by Wade, and the defendants were not justified in refusing to perform upon their part because Wade refused to saw and measure the lumber.

Nor is there any more merit in the contention of the defendants that this contract constituted a sale of the standing timber, and that the measure of damages applicable thereto for a failure upon their part to perform is that applicable to sales of real estate, to-wit, the return of the purchase price with interest, in the absence of any showing of fraud upon the part of the party failing to perform. This contract did not provide for the sale of real estate. It contemplated the cutting of this timber into manufactured lumber. It is one entire contract. There were certain things to be performed by the plaintiff, and certain other covenants to be kept and performed by the defendants. The defendants were to furnish the timber and cut the same into logs, as directed by the plaintiff, but before anything was to be paid therefor these logs had to be sawed into manufactured lumber and the same measured, and for each 1000 feet, board measure, the plaintiff agreed to pay the defendants the sum of $6.25 per thousand feet. But even if this contract could be treated as a contract for sale of real estate, it would not help the defendants, for the reason that it cannot be said that they were free from fraud in failing to perform on their part when they had it in their power to perform, and refused performance without any legal or valid excuse. The contract, however, as we have said, is not one for the sale of real estate, but is one by which the plaintiff agreed to pay the defendants $6.25 for each thousand feet of lumber manufactured from their timber in accordance with the terms agreed upon. The contract as a whole indicates that the point at which the defendants ceased to be interested in the timber, and the

plaintiff became the sole owner thereof was after the same was cut into lumber, and the amount thereof ascertained. *Furrow* v. *Bair*, 84 W. Va. 654.

Nor is there any more merit in the contention that the true measure of damages is the difference between the market value of these logs as they would have been in the woods after the trees were cut down by the defendants and the price of $6.25 per thousand feet, which the plaintiff had agreed to pay therefor. This was not the subject-matter that the defendants were contracting about. It was only a part of it. What the contract contemplated, and what its full execution would have secured would have been manufactured lumber at the mill. The parties by the terms of the contract itself measured their responsibilities to each other by this standard, and the true measure of the damages to which the plaintiff would be entitled, if he shows a right to recover, would be the difference between the market value of the product which would have been produced had the contract been executed and the cost of producing the same. It is true, the evidence offered by the plaintiff as to the market value of such lumber as would have been manufactured from this timber is not entirely definite and certain, but then we must consider that the court declined to admit the evidence along this line, and no doubt the plaintiff only offered sufficient of the evidence which he had available to test the propriety of this ruling. The plaintiff's manager does testify that he was acquainted with the market value of such lumber as would have been produced had this contract been carried out; that he knows what it would cost to manufacture the lumber under the contract, and that there would be approximately 300,000 feet of it when the contract was completely executed, and that the profit on this would be $25.00 a thousand feet. This testimony does not in so many words say that the market value would have been $50.00 per thousand feet, but that is the effect of it.

The evidence offered by the plaintiff as to the amount expended by him in preparing to carry out the contract upon his part was properly rejected. This is not an element of

his damages.    If the contract had been fully executed, and he had gotten the benefit of it he would have had to spend this money.    What he is entitled to recover, in case he shows a right to recover upon another trial, is such sum as would give to him the full benefit of the contract he entered into, and this will be measured by the difference between the market value of the product which would have been produced had the contract been executed and the cost of such product at the time and place the same should have been manufactured under the contract.

It follows from what we have said that the judgment complained of will be reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*